MANUFACTURERS ACCEPTANCE CORPORATION, A COR-
PORATION, AND ENGINEERED BUILDING SPECIALTIES,
INC., A CORPORATION, PLAINTIFFS AND APPELLANTS, v. JOHN
C. KRSUL AS AND AS SHERIFF OF CASCADE COUNTY, MONTANA,
AND SLETTEN CONSTRUCTION COMPANY, A CORPORA-
TION, DEFENDANTS AND RESPONDENTS.

No. 11336.
Submitted November 29, 1967. Decided March 13, 1968.
438 P.2d 667.

Church, Harris, Johnson & Williams and Cresap McCracken, Great Falls, Cresap McCracken (argued), Great Falls, for appellant.

Jardine, Stephenson, Blewett & Weaver, Great Falls, Alexander, Kuenning & Hall, Great Falls, Jack Lewis (argued), Great Falls, for respondent.

MR. JUSTICE HASWELL, delivered the Opinion of the Court.

This is an appeal by plaintiffs from an order of the district court of Cascade County granting a summary judgment to defendants. The suit in question generally seeks the release of execution levies an accounting of the property levied against, and delivery of such property from the defendants to one of the plaintiffs together with exemplary damages against one defendant for wrongful seizure thereof.

There are two plaintiffs in this action, Manufacturers Acceptance Corporation (hereafter called MAC) and Engineered Building Specialties, Incorporated (hereafter called EBS). EBS is a Washington corporation whose principal business is the design and installation of architectural curtain walls. MAC is a Washington corporation whose business is discount purchasing of accounts receivable of business enterprises. There are two defendants in this action: John S. Krsul, the Sheriff of Cascade County, who is sued in his official capacity only (hereafter called Krsul) and Sletten Construction Company, a Montana corporation engaged in building construction (hereafter called Sletten). Also mentioned hereafter although not a party to this action is Purvis Construction Company, the prime contractor on the construction of the Montana Deaconess Hospital in Great Falls (hereafter called Purvis), who appeared as amicus curiae herein.

On May 15, 1962, EBS and MAC entered into a contract entitled "Factoring Agreement." The substance of this agreement provided for the purchase by MAC at a discount such accounts receivable of EBS as were acceptable to MAC; upon

purchase of any given account receivable, title to the same was to be transferred contemporaneously by bill of sale whereupon MAC would become sole owner thereof. On September 20, 1962, EBS signed its first subcontract with Sletten, the prime contractor, involving curtain wall work to be done by EBS on the Sacajawea School in Great Falls. At the time of signing this subcontract EBS was not qualified to do business in Montana but completed such qualification on November 23, 1962. The following day EBS signed its second subcontract with Sletten involving certain window work to be done by EBS on the First National Bank building in Missoula. On March 6, 1963, EBS signed a subcontract with Purvis whereby EBS was to perform certain work on the Montana Deaconess Hospital in Great Falls.

From approximately November 23, 1962, until about January 28, 1964, EBS was engaged in business in Montana on various projects including, among other things, performance of the subcontract with Sletten on the Sacajawea School and the subcontract with Purvis on the Montana Deaconess Hospital. During the period of time that EBS was engaged in business in Montana, it failed to file any corporation license tax returns and did not pay its corporation license taxes.

During the period of time that EBS was doing business in Montana, it performed its subcontract with Sletten on the Sacajawea School and received payment therefor except the sum of $4,334.37. On December 12 and 23, 1963, EBS sold this unpaid balance of its account receivable against Sletten to MAC pursuant to the so-called "Factoring Agreement." Also during the year 1963, and in the month of January 1964, from time to time as they accrued and became payable, EBS sold its accounts receivable against Purvis under the Montana Deaconess subcontract to MAC.

In January 1964, EBS either withdrew or defaulted on its subcontract with Sletten on the First National Bank building in Missoula and Sletten, the prime contractor took over the

subcontract. About April 1, 1964, Sletten secured a default judgment against EBS in the sum of $7,347.44 in the district court of Cascade County and caused execution to be levied by Krsul against the following: (1) Cash in the amount of $4,334.37 held by Sletten, being the balance owed by Sletten to EBS on the Sacajawea School subcontract; (2) an unliquidated credit claimed to be in the possession of and owing by Purvis on the Montana Deaconess Hospital subcontract with EBS; and (3) an unliquidated claim for rental of machine tools in the possession of Purvis for usage of such tools during construction of the Montana Deaconess Hospital.

Thereafer on January 8, 1965, EBS was suspended from doing business in Montana by the Secretary of State by reason of its failure to file corporation license tax returns and pay its corporation license taxes.

The instant suit was commenced by the filing of a complaint by MAC only on January 20, 1966, wherein MAC claimed to be the owner of and entitled to possession of the three items levied against by Sletten as set forth above and asked for the following relief: (1) release of the levies of execution by Sletten on this property; (2) an accounting thereof and delivery of the same to MAC; and (3) exemplary damages against Sletten for wrongful seizure thereof under execution. On May 2, 1966, an amended complaint was filed naming EBS as an additional party plaintiff. On May 19, 1966, Krsul and Sletten answered contending, among other things, that the claims of MAC were barred and unenforceable by reason of violation by EBS of various statutes relating to foreign corporations doing business in Montana. On August 17, 1966, MAC and EBS filed their reply alleging, among other things, that proceedings were under way to cure these violations. On September 20, 1966, the corporation license tax defaults of EBS were remedied and the Secretary of State, after clearance by the State Board of Equalization, issued a

certificate of reviver of the right of EBS to do business in Montana.

Following various interrogatories, answers, and admissions of the parties, defendants Krsul and Sletten moved for a summary judgment under Rule 56, M.R.Civ.P. on the ground that the claims of plaintiffs MAC and EBS were barred by the provisions of sections 15-1701, 15-1703, and 84-1514, R.C.M. 1947, (all relating to requirements, prohibitions, disabilities, and qualifications of foreign corporations doing business in Montana). The motion for summary judgment was granted and this appeal followed.

The foregoing statement constitutes the basic facts material to determination of this appeal. The ultimate issues presented for review upon this appeal are: (1) Is there any genuine issue of fact material to determination of the right of defendants to judgment?; and (2) Are the claims of MAC barred as a matter of substantive law?

Underlying the determination of these ultimate issues are the following considerations: (1) Are disputed facts relating to the existence or non-existence of notice and consent by Sletten to the transfer of ownership of the Sacajawea and Deaconess accounts from EBS to MAC material to the determination of the right of defendants to judgment?; (2) The effect of EBS signing the Sacajawea subcontract with Sletten prior to its qualification to do business in Montana; (3) The effect of EBS failing to file its corporation license tax returns and pay its corporation license taxes when due (4) What disabilities, if any, of EBS against Sletten on the Sacajawea and Deaconess subcontracts are chargeable against MAC in this action? and (5) The effect of subsequent filing of corporation license tax returns and payment of delinquent corporation license taxes on behalf of EBS resulting in reviver of the right of EBS to do business in Montana?

Regarding the existence of a genuine issue of material fact, plaintiffs contend that the record discloses such issue

of fact relating to notice to Sletten of the assignment of the accounts in question from EBS to MAC, Sletten's consent to such assignment, and the course of dealing between EBS, MAC, and Sletten giving rise to an estoppel against Sletten to assert any defense based on lack of notice or consent. These factual issues, they contend, must be resolved before the legal rights of MAC and Sletten and the priority of their respective claims to the property levied upon can be determined. We disagree. At the outset it must be noted that these claimed factual issues are not germane to the account and claims arising out of the Deaconess subcontract with Purvis; they relate only to the balance of $4,334.37 on the subcontract between EBS and Sletten on the Sacajawea School. Assuming without deciding that Sletten had notice of the interest of MAC in the payments owing, or to become owing EBS under the Sacajawea subcontract, and consented thereto prior to or contemporaneously with the assignment of the account from EBS to MAC, as contended by plaintiffs, determination of defendant's right to judgment remains unaffected. In our view, defendant's rights herein are not bottomed upon or related in any way to notice, consent or estoppel as will be developed hereafter. We hold, therefore, that there is no genuine issue of fact material to determination of the right of defendants to judgment herein.

Passing on to the second underlying issue that is posed herein, viz: the effect of EBS signing the subcontract with Sletten for work on the Sacajawea School prior to its qualification to do business in Montana. Defendants argue that EBS is precluded from recovery of the $4,334.37 balance owed by Sletten because the Sacajawea subcontract is void and unenforceable under the provisions of section 15-1703, R.C.M. 1947. This statute reads, in its pertinent parts, as follows: *"Contracts void if made before compliance with act.* If any foreign corporation shall attempt or commence to do business in this state without having first [qualified to do business in

Montana] * * * no contract made by such corporation, * * * during said time, shall be enforceable by the corporation until the foregoing provisions have been complied with."

■■ The difficulty in construing the statute in this respect is caused by the language used in the heading to the Act stating that contracts made before compliance are "void" and the body of the Act providing that such contracts are unenforceable by the corporation until compliance. The title to the statute is subordinate to the text in construing the statute (Eastman v. School Dist., No. 1., 120 Mont. 63, 180 P.2d 472; State ex rel. Jones v. Erickson, 75 Mont. 429, 244 P. 287), and the title of the section of the Code may not be resorted to in order to create an ambiguity. (State ex rel. Palagi v. Regan, 113 Mont. 343, 126 P.2d 818). Applying these rules of statutory construction there is no ambiguity, the body of the statute clearly providing that no contract made by a foreign corporation is enforceable during the time it was required to comply and did not comply and until it does comply, any expressions to the contrary in Hutterian Brethren of Wolf Creek v. Haas, D. C., 116 F.Supp. 37, notwithstanding.

The third underlying issue presented for review concerns the effect of the failure of EBS to file corporation license tax returns and to pay its corporation license taxes when due. It is conceded that the corporation license tax return of EBS and payment of corporation license taxes was due on July 15, 1963. Upon failure to file the return and pay the corporation license taxes when due, the return and payment became delinquent. The disabilities that attached at this point were the disabilities contained in section 15-1703, namely, nonenforceability of contracts of the corporation. The part of that statute pertinent at this point reads as follows: "If any foreign corporation shall attempt or commence to do business in this state * * * without complying with any or all of the laws of Montana relating to the payment of fees or licenses,

36

no contract made by such corporation, * * * during said time, shall be enforceable by the corporation until the foregoing provisions have been complied with."

We recognize at the outset that this statute is capable of two interpretations: (1) that only contracts made during the period of delinquency are non-enforceable, or (2) that any contracts of the corporation whenever made are non-enforceable during the period of delinquency. The purpose of the statute being to secure compliance by foreign corporations with Montana laws relating to payment of fees and licenses and to provide a penalty for noncompliance in the form of nonenforceability of its contracts, we must construe the statute in the light of such purpose. Therefore we hold that the statute means that any contract of a foreign corporation is not enforecable during the period of delinquency in payment of its fees and licenses. To hold otherwise would provide a ready-made loop hole for non-payment of Montana licenses and taxes by foreign corporations by permitting such corporations to come into the state, execute contracts before any licenses and taxes became due and payable, refuse or fail to pay such licenses and taxes, and still enforce their previously executed contracts in the courts of this state.

But are corporation license taxes "fees and licenses" within the meaning of section 15-1703, R.C.M.1947? Plaintiffs argue that they are not because the statute that later became section 15-1703 pre-dated any Montana corporation license tax law. Therefore, they argue, our Legislators in enacting the forerunner of section 15-1703, could not have intended the terms "fees and licenses" to refer to corporation license taxes not then in existence. This argument is specious. In our view the intent of the Legislature was to require payment of all licenses and taxes imposed by law whether theretofore or thereafter enacted to subserve the general purpose of the statute in requiring compliance with our tax laws by foreign corporations doing business in this state.

Additionally, the provisions of section 15-1701, subd. 4, provide that any foreign corporation "refusing to comply with any and all the laws of Montana relating to the payment of fees or licenses" shall be subject to "all the penalties, liabilities, and restrictions imposed by law" upon foreign corporations for doing business in Montana without qualifying. One of these "penalties, liabilities, and restrictions" so imposed is nonenforecability of their contracts under section 15-1703, supra.

For the foregoing reasons we hold that the effect of nonpayment of corporation license taxes by EBS when due rendered all EBS contracts nonenforceable during the period of such delinquency. The effect of subsequent payment of these taxes and reviver of the right of EBS to do business will be discussed later in this opinion.

The fourth underlying issue presented for review is what disabilities, if any, of EBS against Sletten are chargeable against MAC in the instant case. The disability with which we are concerned here is the disability that attached on July 15, 1963, when the corporation license taxes of EBS became delinquent, viz.: the nonenforceability of contracts of EBS during the period of delinquency. It must be borne in mind that this delinquency continued until August or September 1966. In the intervening time the accounts receivable of EBS against Sletten on the Sacajawea subcontract and against Purvis on the Deaconess subcontract were sold to MAC during the months of November and December 1963, and January 1964; EBS discontinued doing business in Montana in January 1964; Sletten secured his judgment against EBS and levied execution thereon in April 1964; in January 1965 EBS was suspended from doing business in Montana, and the instant suit was filed in January 1966 with the defenses thereto filed in May 1966.

Thus, EBS was disabled from enforcing its subcontracts on the Sacajawea School and the Montana Deaconess Hospital at the time they sold the accounts receivable under

these subcontracts to MAC. This disability had accrued and attached to these subcontracts and accounts while they were owned by EBS. EBS could transfer no greater interest in them to MAC than EBS itself possessed. Thus, EBS could transfer no enforceable right in them to MAC because EBS itself possessed no enforceable right. It is basic that an assignee purchase a nonnegotiable instrument (such as the account receivable here) subject to defenses existing against the assignor at the time of the assignment. (Apple v. Edwards, 92 Mont. 524, 16 P.2d 700, 87 A.L.R. 179). As Sletten had the defense of nonenforceability against EBS, the assignor, at the time of the assignment such defenses remained available to Sletten against MAC, the assignee, both as to the Sacajawea and Deaconess transfers. Both claims were simply nonenforceable during the delinquency in the hands of either EBS or MAC.

The argument is advanced by plaintiffs that EBS was not disabled from enforcing the Sacajawea and Deaconess accounts at any time because subsequent disqualification does not bar enforcement of duly executed contracts where only payment remains. Suffice it to say that the authorities cited in support of this proposition were not construing statutes such as ours but were construing statutes that dealt with disqualification to do business rather than enforceability of contracts. Our statute, section 15-1703, supra, contains no such limitation, and as we have construed its purpose, would provide an easy means of evasion of that purpose if such limitation were read into it.

We hold therefore, that at the time of the assignment of the accounts in question EBS had no right of enforcement thereof, which disability was transferred to the assignee, MAC, and which disability continued past the completion of all pleadings in the instant suit. Thus, the defense of nonenforceability raised by defendants herein constitutes a valid defense entitling defendants to judgment as a matter of law unless the subsequent payment of delinquent taxes on behalf of EBS

and reviver of its right to do business in this state alters the picture.

■ This brings us to the final underlying issue for review, namely, the effect of subsequent payment of corporation license taxes and reviver of the right of EBS to do business in Montana. We have heretofore construed section 15-1703 as rendering nonenforceable during the period of delinquency the contracts of a foreign corporation that does not pay its corporation license taxes when due. After the delinquency is cured, the bar of nonenforceability is removed as we construe the statute. But what of the rights of Sletten that vested and accrued during the period of delinquency? Here, Sletten's right to the property in question vested and accrued under the execution levies, and this right was superior to any right of MAC thereto because of nonenforceability of the contracts on which the accounts were based. To permit MAC now to divest this superior, accrued right of Sletten to the property levied upon, which pre-dated payment of the delinquent corporation license taxes of EBS by more than two years is to indulge in legal gymnastics of a higher order than the writer of this opinion possesses. Under the circumstances disclosed here, we hold the subsequent compliance by payment of delinquent corporation license taxes removes the bar of nonenforceability of the contracts in question under section 15-1703, as of the date of payment of such delinquent taxes, but that removal of the bar of nonenforceability does not relate back to the date of the original delinquency so as to bar superior rights of others that accrued during the period of delinquency.

■ Defendants contend that section 84-1515 precludes any effect or reviver on defenses that had accrued prior thereto. This statute provides, in part, as follows: "The reviver shall be without prejudice to any action, defense or right which has accrued by reason of the original suspension or forfeiture." We do not consider this argument germane under our analysis because it is predicated on the right of the corporation to do

40

business rather than upon the nonenforceability of the contract.

We hold, therefore, that defendants were entitled to judgment as a matter of law and that Judge Bradford was correct in granting them summary judgment on the record herein.

We have examined the other issues and arguments raised by plaintiffs, defendants, and amicus curiae but consider that none would vary the result and rulings herein announced.

The order granting summary judgment to the defendants is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and Mr. JUSTICES ADAIR, CASTLES and JOHN CONWAY HARRISON, concur.