No. 79-105

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

_____

IN THE MATTER OF

MONTANA PACIFIC OIL AND GAS CO. AND
VARIOUS RECORD OWNERS OF OIL AND GAS
INTERESTS FOR WHICH MONTANA PACIFIC
OIL AND GAS CO. IS HOLDING FUNDS.

MONTANA PACIFIC OIL AND GAS CO.,

Appellant.

_____

Appeal from:   District Court of the Ninth Judicial District,
               In and for the County of Toole.
               Hon. R. D. McPhillips presiding District Court Judge.

Counsel of Record:

    For Appellant:

        Aronow, Anderson, Beatty and Lee, Shelby, Montana
        Richard Munson argued, Shelby, Montana

    For Amicus Curiae:

        Hon. Mike Greely, Attorney General, Helena, Montana
        Dennis Dunphy argued, Assistant Attorney General,
         Helena, Montana
        Ray Kalbfleisch argued, County Attorney, Shelby, Montana

_____

                              Submitted:  May 29, 1980

                               Decided:  July 22, 1980

Filed:  JUL 23 1980


_____
                Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

On December 18, 1979, the Montana Pacific Oil and Gas Co. (MOPOG) petitioned the District Court, Toole County, Ninth District, to obtain orders requiring the clerk of the court, Vivian S. Hall, to receive funds tendered by the petitioner and to establish a trust in the name of the petitioners; to receive future funds; and further that the court decree the petitioner had no duty to search for owners of interest hereafter described, and to require the clerk of the court to hold MOPOG harmless from any future claims of the owners of those property interests.

The District Court, on December 18, 1979, denied each request and prayer of MOPOG by its written order of that date. Thereafter, MOPOG petitioned this Court for an order of supervisory control and after considering that petition, we ordered MOPOG to appeal the order of the District Court in the usual course. Attorney General Mike Greely appeared and filed a brief in this Court as amicus curiae in support of the District Court.

This appeal arises because of the provisions of Ch. 513, Laws of Montana (1979), which have been recodified as sections 82-1-302, 82-1-303, 82-1-304 and 82-1-305, MCA. Section 6 of said Chapter 513, defining the word "person" has been now codified as section 82-1-301, MCA.

MOPOG principally attacks the provisions of section 82-1-305, on constitutional grounds. That section provides as follows:

> "Existing trust for unlocatable mineral, lease-
> hold, and royalty interest owners -- transfer of
> trustees -- penalty. (1) Any bonuses, rental
> payments, royalties, and other income now held
> by any person or association for unlocatable
> owners or claimants of an interest in person or
> association for unlocatable owners or claimants
> of an interest in minerals underlying a tract of
> land must be deposited with the clerk of the
> district court in which the tract is located

of unlocatable owners of mineral interest. It is quite evident that the enactment is not a taxing statute. The enactment of a statute for the protection of private property is a valid exercise of the sovereign police power of the state:

> ". . . the police power extends . . . to the protection of the life, limbs, health, comfort and quiet of all persons, and the protection of all property within the state . . ." Ruona v. Billings (1958), 136 Mont. 554, 558, 323 P.2d 29, 31.

MOPOG in asserting its claim of discriminatory classification under its equal protection argument, states that it belongs to a class of persons holding "unclaimed property", that is, money or other tangible or intangible property for which no claim has been filed by the reputed owner thereof or for which the holder has no knowledge of the reputed owner's whereabouts. MOPOG contends that a certain class of persons, oil and gas operators, holding unclaimed royalties, bonuses or other income from oil and gas operations are a "subclass" subjected to burdens and responsibilities for failure, intentionally or unwittingly, to comply with the provisions of section 82-1-305. It points out that other persons holding unclaimed property in Montana in the form of cash, stock dividends, or security deposits, are subject to the terms of the Uniform Disposition of Unclaimed Property Act, sections 70-9-101, et seq., MCA. Under that Act, MOPOG states the presumption of abandonment arises from the inaction of the owners, not the holders, of the property. The only burden of the holder of that property is to report, under that Act, to the Department of Revenue, and to turn over funds which are presumptively abandoned.

Likewise, MOPOG contends that under the provisions relating to public administrators and escheated estates, the public administrator is directed under statute, section 72-15-102, MCA, to take charge of estates of persons dying with no known heirs or where the estate is ordered into the public admin-

within 6 months after July 1, 1979. An accounting for the funds, any related documents, and any instrument creating a trust must be filed with the funds.

"(2) No person may personally hold for longer than 6 months any bonuses, rental payments, royalties, and other income for unlocatable owners or claimants of an interest in minerals, but in such case must petition the district court for creation of a trust as provided in 82-1-302.

"(3) If any person fails to comply with subsections (1) or (2), he is liable for all attorney fees and court costs and interest on such funds at twice the current average passbook account rate paid by financial institutions in that district."

MOPOG attacks section 82-1-305, MCA, as being unconstitutional under the equal protection and due process clauses of the federal and state constitutions. MOPOG further contends that it was entitled to the declaratory relief sought in the District Court, and that the filing fee charged by the District Court clerk in the matter of $35 was improper.

MOPOG's equal protection argument is, that the statute is not an exercise of police power, but a tax enactment; that taxing statutes are subjected in equal protection cases to more than minimum scrutiny but less than strict scrutiny to determine constitutionality; and that MOPOG and other oil and gas producers have been singled out in an arbitrary fashion to be subject to the requirements of section 82-1-305, MCA.

MOPOG's argument that section 82-1-305 is a tax statute arises from the provision that the clerk of the District Court, as trustee, is entitled to receive 50 percent of the interest earned on trust funds for administrative costs, section 82-1-304(5), MCA, and because the trust funds may eventually be considered abandoned to the state under Title 70, Chapter 9, MCA.

The primary purpose of these statutes, as enacted under Ch. 513, Laws of Montana (1979), is the protection of property

istrator's hands by a court. MOPOG contends that here the person lawfully holding the unclaimed property has no duty to attempt to find the owner, but rather the owner or his heirs have seven years (section 26-1-602(26), MCA) within which to come forward and make a claim. MOPOG further contends that section 82-1-305, although presumably having the same goal, reverses the theory and method applicable to other holders of unclaimed property in that oil and gas operators have a duty to make a diligent search for the owner thereof and to establish trusts if the owners are not otherwise located.

Is the classification so delineated by MOPOG unconstitutional under the equal protection clause of either the state or federal constitutions? Clearly not.

In the first place, the provisions of Ch. 513, Laws of Montana (1979) apply to all mineral producers, and not only to oil and gas producers. In the second place, the classification can be found proper and rational for its purposes: the protection of funds for unlocated property owners for at least the presumptive period of their lives after the establishment of the trust, and the legal release of those persons who hold the funds of unlocated owners from further liability if they have complied with the statutes codified under Chapter 513.

As the attorney general has pointed out, this Court has consistently followed the lead of the United States Supreme Court in interpreting the equal protection clauses of both the state and federal constitutions. Both the Fourteenth Amendment of the federal constitution and Art. II, §4, Mont. Const. ". . . provide generally equivalent but independent protection in their respective jurisdictions". Emery v. State (1978), ____ Mont. ____, 580 P.2d 445, 35 St.Rep. 709; cert.den. 439 U.S. 874.

We find rational support for the classification here in its stated objectives. See, State v. Safeway Stores, Inc.

(1938), 106 Mont. 182, 76 P.2d 81; State v. Johnson (1926), 75 Mont. 240, 243 P.2d 1073; State v. Loomis (1925), 75 Mont. 88, 242 P. 344; Hill v. Rae (1916), 52 Mont. 378, 158 P. 826; City of Butte v. Paltrovich (1904), 30 Mont. 18, 75 P.2d 521. In the matter of classification, the legislature enjoys broad discretion, and the question of classification is primarily one for the legislature. Safeway Stores, supra, 106 Mont. at 204, 76 P.2d at 86.

Even if section 82-1-305, MCA, were considered to be a tax statute, the classification power of the legislature is one of broad discretion. Madden v. Kentucky (1940), 309 U.S. 83, 87-88, 60 S.Ct. 406, 408, 84 L.Ed. 590, 593.

We find that the state, through its legislature, has a legitimate interest in establishing a classification for the protection of unlocated owners of interests in minerals or in mineral production and in providing a method for the protection of mineral producers, including oil and gas operators, as a defense against liability from future claims of such unlocated owners. On that basis, the classification is well within the power of the state under the equal protection clause of either constitution.

The due process argument of MOPOG is that section 82-1-305, MCA, is so vague and uncertain in its terms as to convey no meaning and that it is confusing and inconsistent with other statutes, including section 82-1-302, MCA. MOPOG also attacks the terms "existing trust", "transfer of trustees", "unlocatable owners", "tract of land", and "related documents", as being uncertain and incapable of definition under the act. It states that these asserted ambiguities expose MOPOG to great potential liability under section 82-1-305(3), MCA, for attorney fees, court costs and interest at twice the current average passbook account rate.

The due process test for vagueness of a statute is whether

the law is so vague and uncertain that men of common intelligence must guess at its meaning. Cramp v. Bd. of Public Instruction (1961), 368 U.S. 278, 82 S.Ct. 275, 7 L.Ed.2d 285; Connally v. General Const. Co. (1926), 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322.

We agree with the attorney general that the requirements of the sections are not difficult to ascertain:

1. Any person holding funds payable to persons the holder cannot locate, produced from mineral interests or mineral production, including oil and gas, must turn the funds over to the clerk of the local District Court. A grace period of six months is allowed from the enactment of the statutes.

2. Subsequent to the enactment of the statutes, no holder of the type stated above may continue holding payments for the account of unlocatable persons for longer than six months. In turning over the monies to the clerk of the court as required by the statutes, the holder must petition for a trust as provided for in section 82-1-302, MCA.

3. Civil penalties are provided for failure to comply with the statutes.

In addition, the petitioner must allege or prove facts which show that the petitioner has made a diligent but unsuccessful effort to locate the absent owners or claimants. The related documents would of course be the documents that are "related", --the lease, mineral deed or other instrument which gives the producer the right to produce the minerals, and the producer's records of production and division of proceeds from production should suffice. "Tract of land" would include all parcels described in a single lease, mineral deed, or other instrument giving the producer the right to produce minerals. While some minor difficulties might arise from the innumerable varieties of situations possible from the mineral production business, we are not required by MOPOG's search for ambiguities

-7-

to find such vagueness in the terms used as to destroy the act, when our duty is to construe it so as to be consistent with the will of the legislature and to comport with constitutional limitations. CSC v. Letter Carriers (1973), 413 U.S. 548, 571, 93 S.Ct. 2880, 2893, 37 L.Ed.2d 796, 812. The term "existing trust" is found in the title of the statute, and is an inadvertence which has no importance because it is the body of the act and not its title which controls. Manufacturer's Acceptance Corporation v. Krsul (1968), 151 Mont. 28, 35, 438 P.2d 667, 671.

The petition filed by MOPOG in the District Court under section 82-1-302, MCA, was clearly deficient. MOPOG's petition to create a trust failed to allege any effort to locate owners, sought an order declaring that it had no such duty, and sought to establish a lump sum trust for all of the monies held by MOPOG for unlocatable owners without regard to the particular tract of land involved. The District Court had no power to establish a trust as petitioned by MOPOG since it was outside the applicable statutes. The petition was properly rejected.

MOPOG has also proposed nine questions for our review under the act and has asked us to give our determination with respect to those questions. We limit ourselves, however, to the issues growing out of the appeal which is before us, and insofar as the answers to MOPOG's questions are not found herein, we decline to answer for the reason that it is not the function of the Supreme Court, by way of declaratory judgment, to give opinions on abstract or moot questions. In this we follow the rule applicable to District Courts. Chovanak v. Matthews (1948), 120 Mont. 520, 525-6, 188 P.2d 582, 586.

The remaining issue is the amount of fee chargeable by the clerk of the District Court. None of the statutes with which we are involved in this case set forth the amount of fee

to be charged by the District Court clerk. The applicable statutes with respect to fees of the clerk appear in conflict as to the nature of these proceedings and it is therefore a matter of our choice here as to which fee would be most consistent with the intent of the legislature.

Section 25-1-201(1)(a), MCA, provides a fee shall be charged by the clerk of $20 for each "action or proceeding". Section 25-1-201(1) (n), MCA, requires a fee of $35 for probate proceedings, guardianships, or the appointment of a conservator. The District Court clerk here apparently determined that the establishment of a trust was most likely a probate proceeding and therefore charged the $35 fee.

Section 27-1-102, MCA, defines the words "actions" and "special proceedings". An "action is an ordinary proceeding in a court of justice by which one party prosecutes another for the enforcement of protection of a right, the redress or prevention of a wrong . . . Every other remedy is a special proceeding." Under that provision we determine that the requirements of sections 82-1-302 and 82-1-305, MCA, are "special proceedings" and as such the fee of $20 would be proper to assess for each such proceeding filed. Such a filing fee would apply whether the trust was established under section 82-1-302 or section 82-1-305, MCA. It seems obvious from the statutes that if a trust were to be instituted under section 82-1-302, and that subsequently funds subject to deposit were cumulated in the same mineral leasehold where there were unlocatable owners or claimants, subsequent deposits should be deposited in the trust already created under section 82-1-302, MCA.

Affirmed except for the amount of filing fees to be

collected by the clerk of the District Court upon the
institution of trusts under these statutes.

_John C. Shelhy_

We Concur:

_Frank I. Haswell_
Chief Justice

_John Conway Harrison_

_Daniel J. Shea_

_Gene B. Daly_
Justices

-10-