No. 98-155

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 251

COUNTERPOINT, INC., a Montana non-profit corporation,

Plaintiff and Appellant,

v.

ESSEX INSURANCE COMPANY,

Defendant and Respondent.

APPEAL FROM: District Court of the Sixth Judicial District,

In and for the County of Park,

The Honorable Wm. Nels Swandal, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Robert L. Jovick, Attorney at Law, Livingston, Montana

For Respondent:

Peter F. Habein; Crowley, Haughey, Hanson, Toole

& Dietrich, P.L.L.P.; Billings, Montana

Submitted on Briefs: June 25, 1998

Decided: October 20, 1998

Filed:

_____

Clerk

Justice Jim Regnier delivered the opinion of the Court.

¶ **Appellant, Counterpoint, Inc., filed an action against respondent, Essex Insurance Company, in the Sixth Judicial District Court, Park County, after Essex refused to defend and indemnify Counterpoint in a wrongful discharge action under a liability insurance policy. Pursuant to the parties' cross-motions for summary judgement regarding the terms of insurance coverage, the District Court granted judgment in Essex's favor. Counterpoint appeals, and we affirm.**

¶ **The dispositive issue before us is whether Essex was bound by the liability insurance policy to defend and indemnify Counterpoint in a wrongful discharge suit.**

FACTUAL BACKGROUND

¶ **The parties do not dispute the following material facts. Counterpoint is a nonprofit organization operating group homes for developmentally disabled adults. After Counterpoint's executive director terminated an employee for alleged misconduct, the employee filed a complaint against Counterpoint pursuant to Montana's Wrongful Discharge From Employment Act, §§ 39-2-901 to -915, MCA, in the Sixth Judicial District Court, Park County. The employee alleged only one cause of action-- wrongful discharge.**

¶ **During all the pertinent events of this case, Essex provided Counterpoint with liability insurance. Per the professional liability portion of the insurance policy,**

Counterpoint requested that Essex defend and indemnify it in the wrongful discharge suit. Essex refused, contending that the terms of the policy do not cover employee terminations. The sections of the policy subject to their dispute are the professional liability provision and the combined provision endorsement. The professional liability provision covers injuries caused by Counterpoint "arising out of any negligent act, error or omission in rendering or failure to render professional services." However, the combined provisions endorsement states that the policy "does not cover any claims arising out of . . . [t]ermination of employment."

¶ The parties introduced their dispute first in Federal District Court. Essex commenced a declaratory judgment action in the United States District Court, and the parties filed cross-motions for summary judgement. On August 3, 1995, the Federal District Court granted summary judgment in Essex's favor. On April 1, 1996, the Ninth Circuit Court of Appeals reversed the Federal District Court's decision and remanded the case with instructions to dismiss for lack of proper jurisdiction.

¶ Thereafter, on October 16, 1996, Counterpoint filed this action against Essex in the Sixth Judicial District Court, Park County, under Montana's Declaratory Judgment Act. In response to the parties' cross-motions for summary judgment, the District Court granted summary judgement in favor of Essex on December 19, 1997. Counterpoint appeals.

## STANDARD OF REVIEW

¶ On appeal from a summary judgment, this Court reviews a case *de novo* based on the same criteria applied by the district court. *See Stutzman v. Safeco Ins. Co.* (1997), 284 Mont. 372, 376, 945 P.2d 32, 34 (citing *Treichel v. State Farm Mut. Auto. Ins. Co.* (1997), 280 Mont. 443, 446, 930 P.2d 661, 663). Thus,

> [t]he movant must demonstrate that no genuine issues of material fact exist. Once this has been accomplished, the burden then shifts to the non-moving party to prove by more than mere denial and speculation that a genuine issue does exist. Having determined that genuine issues of material fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law. [This Court] reviews the legal determination made by a district court as to whether the court erred.

*Stutzman*, 284 Mont. at 376, 945 P.2d at 34 (quoting *Bruner v. Yellowstone County* (1995), 272 Mont. 261, 264-65, 900 P.2d 901, 903). Our review of a summary judgment is much broader than other appeals. *See District No. 55 v. Musselshell County* (1990), 245 Mont. 525, 527, 802 P.2d 1252, 1253 (quoting *McCain v. Batson* (1988), 233 Mont. 288, 298, 760 P.2d 725, 731). If we agree with the conclusions of the district court, we can affirm the district court's decision, if correct, regardless of its reasons. *See Norman v. City of Whitefish* (1993), 258 Mont. 26, 30, 852 P.2d 533, 535; *Musselshell*, 245 Mont. at 527, 802 P.2d at 1253; *Jerome v. Pardis* (1989), 240 Mont. 187, 192, 783 P.2d 919, 922.

## DISCUSSION

¶ **Was Essex Insurance Company bound by the liability insurance policy to defend and indemnify Counterpoint in a wrongful discharge suit?**

¶ **The District Court held that Essex was not bound to defend and indemnify Counterpoint because the professional liability provision of the insurance policy covers only Counterpoint's professional services. The District Court defined professional services as services rendered to a patient or client, and expressly excluded acts of terminating employees.**

¶ **We affirm the District Court's decision; however, we affirm on separate grounds. We conclude that the combined provisions endorsement of the insurance policy, which states that the policy "does not cover any claims arising out of . . . [t]ermination of employment," extends to the entire policy, including the professional liability provision. Thus, we do not consider the scope of the professional liability coverage or the meaning of professional services.**

¶ **As Essex argues, and we agree, the endorsements and provisions of the insurance policy must be read as parts of one policy, not separate policies. Essex contends that the purpose of the combined provisions endorsement is, just as the title suggests, to combine provisions of the entire policy. Considering similar policies, Essex also asserts that professional liability coverage is a standard option under a general liability policy and should be construed as such in this case.**

¶ **Counterpoint argues that since the professional liability provision and the**

combined provisions endorsement are written separately, they should be read separately. Counterpoint identifies nine exclusions listed in the professional liability provision and contends that only these exclusions should apply to professional liability coverage, and none of these exclusions pertain to employee terminations. Considering similar policies, Counterpoint also argues that general liability coverage, which in this case includes the combined provisions endorsement, commonly extends only to occurrence-based coverage such as bodily injury or property damage claims.

¶ On our review, we must interpret Counterpoint's insurance policy as a question of law. *See Stutzman*, 284 Mont. at 376, 945 P.2d at 34. When we review an insurance policy, we are bound to interpret its terms according to their usual, common sense meaning as viewed from the perspective of a reasonable consumer of insurance products. *See Stutzman*, 284 Mont. at 376, 945 P.2d at 34; *Duensing v. Traveler's Companies* (1993), 257 Mont. 376, 381, 849 P.2d 203, 206. While our general rule is to interpret any doubts as to coverage in favor of the insured, we do not do this where the terms of the policy are not ambiguous. *See Daly Ditches Irr. Dist. v. National Sur. Corp.* (1988), 234 Mont. 537, 538-39, 764 P.2d 1276, 1277. If the language of the policy is clear and explicit, we do not rewrite it, but enforce it as written. *See Stutzman*, 284 Mont. at 376, 945 P.2d at 34; *Hurtt v. School Dist. No. 29, Big Horn County* (1986), 222 Mont. 415, 418-19, 723 P.2d 205, 207.

¶ We first conclude that the terms of Counterpoint's liability insurance policy are not ambiguous. Both the combined provisions endorsement and the professional liability provision are clearly identified as attachments under the same policy number. Also, the language of these two provisions clearly relates one to the other. The professional liability provision specifically limits its coverage to the "exclusions, conditions and other terms of this policy." Similarly, the combined provisions endorsement states that "insurance afforded by this policy applies only to the hazards described in the coverage part attached to this policy." The professional liability provision is titled a "coverage part." The combined provisions endorsement also states that "this policy does not cover any claim as a result of rendering of or failure to render any professional service, unless specifically endorsed onto the policy." The professional liability provision does just this--it endorses coverage onto the policy.

¶ Counterpoint argues that the combined provisions endorsement and the professional liability provision should be read separately and that exclusions from professional liability coverage should be limited to the terms of the professional

liability provision. Counterpoint refers to a sentence in the professional liability provision which states that "[l]iability provided by any other coverage part under this policy shall not apply to the rendering of or failure to render professional services," and suggests that since professional liability coverage is expressly limited to the terms of the professional liability provision, exclusions to coverage also should be limited to the terms of the provision. We do not agree with Counterpoint's argument. Just because coverage is limited to a certain provision does not necessarily limit exclusions to that provision.

¶ Counterpoint further argues that if we read both the nine exclusions listed in the professional liability provision together with the exclusions from the combined provisions endorsement, we would cause an unnecessary duplication of some exclusions. Again, we do not agree. We will not read different parts of an insurance policy separately just because they contain similar exclusions.

¶ Counterpoint also incorrectly characterizes the combined provisions endorsement found in the general liability policy by arguing that it should extend only to occurrence-based coverage for bodily injury or property damage. Our common-sense interpretation of the combined provisions endorsement requires us to allow coverage to extend beyond bodily injury or property damage claims. In this policy, the combined provisions endorsement must be read along with the professional liability provision.

¶ Because we conclude that Counterpoint's liability insurance policy is unambiguous, we enforce it as written. Despite Counterpoint's request that we apply the reasonable expectation doctrine and rules for interpreting an adhesion contract against the insurer, we do not apply these principles here. This Court has said that "[e]xpectations which are contrary to a clear exclusion from coverage are not 'objectively reasonable.'" *Wellcome v. Home Ins. Co.* (1993), 257 Mont. 354, 356, 849 P.2d 190, 194; *see also Stutzman*, 284 Mont. at 381, 945 P.2d at 37. Furthermore, we consider special rules of interpreting contracts only when a contract is ambiguous. *See, e.g., Stutzman*, 284 Mont. at 381, 945 P.2d at 37. Even though we have previously recognized an exception to enforcing an unambiguous insurance contract term when the term violates public policy, this exception is not before us. *See, e.g., Augustine v. Simonson* (1997), 283 Mont. 259, 263, 940 P.2d 116, 119.

¶ Other courts that have interpreted general policy exclusions in a professional

liability insurance contract have come to the same conclusion that we do here. *See, e. g., Essex Ins. Co. v. Vincent* (10th Cir. 1995), 52 F.3d 894 (holding that liability coverage can be limited by exclusions found in a different part of the insurance policy).

¶ In accordance with case law and a common sense interpretation of Counterpoint's liability insurance policy, we conclude that the employee termination exclusion found in the combined provisions exclusion applies to the professional liability provision and, therefore, Essex is not bound by the liability insurance policy to defend and indemnify Counterpoint in a wrongful discharge suit.

¶ We affirm the District Court's order for summary judgement granted in favor of Essex.

/S/ JIM REGNIER

We Concur:

/S/ J. A. TURNAGE

/S/ W. WILLIAM LEAPHART

/S/ WILLIAM E. HUNT, SR.

/S/ TERRY N. TRIEWEILER