No. 04-256

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 194

JAY GRIMSRUD, STEVE WENTZ, and
EMC INSURANCE COMPANIES, subrogee,

       Plaintiffs and Appellants,

  v.

MICHAEL FRANK HAGEL,

       Defendant and Cross-Appellant,

  v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

       Intervener and Respondent.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
                In and for the County of Yellowstone, Cause No. DV-02-1023,
                The Honorable Ingrid G. Gustafson, Judge presiding.

COUNSEL OF RECORD:

      For Appellants:

          Lynn M. Grant, Peterson & Schofield, Billings, Montana

      For Cross-Appellant:

          Robert J. Savage, The Savage Law Firm, Sidney, Montana

      For Respondent:

          Randall G. Nelson, Nelson & Dahle, P.C., Billings, Montana

                  Submitted on Briefs:  November 23, 2004
                         Decided:  August 15, 2005

Filed:

                _____
                       Clerk

Justice John Warner delivered the Opinion of the Court.

¶1     Michael Frank Hagel ("Hagel"), Defendant and Cross-Appellant, and Plaintiffs Jay Grimsrud ("Grimsrud"), Steve Wentz ("Wentz"), and EMC Insurance Company ("EMC"), appeal from an Amended Judgment entered February 18, 2004, in favor of State Farm Mutual Automobile Insurance Company ("State Farm"), based on an Order and Memorandum granting State Farm's motion for summary judgment.  We affirm.

¶2     We address the following issues on appeal:

¶3     1.  Did the District Court err in holding that the exclusion in State Farm's motor vehicle liability insurance policy for damage to property being transported by Hagel did not violate § 61-6-301(1)(a), MCA, which mandates motor vehicle insurance coverage?

¶4     2.  Did the District Court err in not concluding that State Farm had a duty to defend Hagel in this lawsuit?

## I. FACTUAL AND PROCEDURAL BACKGROUND

¶5     On February 24, 2002, Hagel, Grimsrud and Wentz were returning from a snowmobile trip on Interstate Highway 94 in Hagel's truck when they were involved in a multiple car accident about 12 miles east of Billings.  Hagel admitted he negligently caused the accident.  Hagel was towing a trailer that belonged to Wentz which contained two snowmobiles, one belonging to Grimsrud and the other to Wentz.  Hagel struck a guard rail causing him to rebound into traffic where he was struck by approaching semi-trucks.  As a result of the accident, in addition to damage to the vehicles and the guard rail, the trailer and the 2 snowmobiles were destroyed.

¶6     Multiple claims were filed against Hagel as a result of the accident.  His State Farm

2

insurance policy provided property damage liability coverage up to $50,000 per accident. The multiple claims exceeded Hagel's $50,000 policy limit. State Farm retained counsel to represent Hagel concerning the claims and to negotiate an apportioned settlement of the claims within policy limits. State Farm paid the policy limit for all claims it determined were covered under Hagel's property damage liability policy, and obtained releases.

¶7     State Farm determined that damage to the trailer itself was specifically covered pursuant to a clause in the policy which stated that "[t]railers designed to be pulled by a private passenger car or a utility vehicle . . . are covered while owned or used by an insured." Accordingly, it paid Wentz's claim for the damage to the trailer as a part of the $50,000 property damage coverage.

¶8     State Farm denied coverage for the damage to the snowmobiles. It determined that an exclusion in the policy which said there was no coverage for "any damages to property owned by, rented to, in the charge of or transported by an insured" applied.

¶9     Damages for destruction of the snowmobiles was determined to be $16,600. Grimsrud and Wentz were each insured with EMC, which paid a total of $16,100 in first party claims. Grimsrud and Wentz both paid $250 deductibles.

¶10     On September 27, 2002, Grimsrud, Wentz and EMC (jointly referred to as "Claimants") demanded payment in writing from Hagel and State Farm in the amount of $16,600. Hagel and State Farm refused payment and Claimants filed suit to recover damages, costs and attorney's fees.

¶11     Hagel and State Farm exchanged numerous letters in which Hagel insisted State Farm pay the amount demanded by Claimants. State Farm consistently advised Hagel that the

3

claims for destruction of the snowmobiles were excluded from liability coverage. State Farm also told Hagel that it would not defend him in any suit filed by the three Claimants to recover for loss of the snowmobiles.

¶12 On November 19, 2002, Claimants filed suit against Hagel. On December 6, 2002, State Farm filed a combined Motion to Intervene in the suit and Motion to Stay Proceedings against Hagel pending the District Court's determination of State Farm's obligation to provide coverage pursuant to its insurance policy with Hagel. Then, on January 8, 2003, Hagel filed a Confession of Judgment in which he admitted liability in the amount of $16,600 in property damage, $5,533.33 in attorney's fees, and $160 in court costs, for a total judgment of $22,293.33. On January 8, 2003, State Farm's Motion to Intervene and Motion to Stay Proceedings was heard. It was granted on February 7, 2003.

¶13 On February 13, 2003, State Farm filed a Motion for Partial Summary Judgment. Claimants filed a Cross-Motion for Partial Summary Judgment on March 7, 2003, and Hagel filed a Cross-Motion for Partial Summary Judgment on March 14, 2003. All parties agreed that there were no genuine issues of material fact and that the case was ripe for summary judgment. By order of November 7, 2003, the District Court granted State Farm's Motion for Partial Summary Judgment, and denied the other parties' motions. The amended judgment appealed from was entered February 23, 2004.

4

## II. STANDARD OF REVIEW

¶14    This Court's review of a district court's grant of summary judgment is *de novo*. *Farmers Union Mutual Ins. Co. v. Staples*, 2004 MT 108, ¶ 18, 321 Mont. 99, ¶ 18, 90 P.3d 381, ¶ 18. Our evaluation is the same as that of the trial court. *Staples*, ¶ 18. We apply the criteria contained in Rule 56, M.R.Civ.P. *Staples*, ¶ 18. According to this rule, "[t]he moving party must establish both the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Staples*, ¶ 18. If this is accomplished, "the burden then shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue does exist." *Staples*, ¶ 18. If the court determines that no genuine issues of fact exist, "the court must then determine whether the moving party is entitled to judgment as a matter of law." *Staples*, ¶ 18. We review legal determinations made by a district court to determine whether the conclusions are correct. *Staples*, ¶ 18.

## III. DISCUSSION

### ISSUE ONE

¶15    **Did the District Court err in holding that the exclusion in State Farm's motor vehicle liability insurance policy for damage to property being transported by Hagel did not violate § 61-6-301(1)(a), MCA, which mandates motor vehicle insurance coverage?**

¶16    There is no claim that the exclusion in State Farm's policy for property owned, used by, or in the care of Hagel is ambiguous, or that it does not exclude coverage for the snowmobiles in question. The three Claimants base their arguments only on the provisions

of § 61-6-301(1)(a), the Mandatory Liability Protection Act ("MLPA")[1].

¶17 Claimants argue that State Farm's exclusionary clause violates § 61-6-301(1)(a), MCA, because it deprives Claimants of liability coverage. Section 61-6-301(1)(a), MCA, provides:

> Except as provided in subsection (1)(b), an owner of a motor vehicle that is registered and operated in Montana by the owner or with the owner's permission shall continuously provide insurance against loss resulting from liability imposed by law for bodily injury or death or damage to property suffered by any person caused by maintenance or use of a motor vehicle, as defined in 61-1-102, in an amount not less than that required by 61-6-103, or a certificate of self-insurance issued in accordance with 61-6-143.

¶18 Absent a statutory exception, an exclusion contrary to this Section is void and unenforceable. *See Iowa Mutual Ins. Co. v. Davis* (1988), 231 Mont. 166, 169, 752 P.2d 168; *Bill Atkin Volkswagen, Inc. v. McClafferty* (1984), 213 Mont. 99, 104, 689 P.2d 1237, 1239. However, the purpose of the MLPA is to protect the public from uncompensated losses arising from the use of a motor vehicle, and so long as the terms of an automobile liability policy provide the statutorily required coverage, an insurer and its insured are free to enter into an agreement that limits liability coverage to the extent that the agreement is otherwise lawful. *Davis*, 231 Mont. at 171-72, 752 P.2d at 170; *Lewis v. Mid-Century Ins. Co.* (1968), 152 Mont. 328, 335, 449 P.2d 679, 682.

¶19 The only exception to required coverage which is set forth in § 61-6-301, MCA, is contained in subsection (1)(b) which concerns exclusion of a named family member. This

---

[1] Part 3, of Title 61, Chapter 6, is entitled Mandatory Liability Protection. There is no part of the Montana Code Annotated which the Legislature has specifically named the Mandatory Liability Protection Act, "MLPA." We use this term to refer to Title 61, Chapter 6, part 3, for convenience.

exclusion is not involved here. Thus, Claimants argue that the exclusion in the policy in question is unlawful.

¶20   However, § 61-6-103(5), MCA, provides:

> A motor vehicle liability policy need not insure . . . any liability for damage to property owned by, rented to, in charge of, or transported by the insured.

¶21   State Farm argues subsection (5) of § 61-6-103, MCA, is a statutory exception to the coverage requirements of a motor vehicle liability policy mandated by § 61-6-301(1)(a), MCA, and the exclusion in the policy in question is, therefore, valid.

¶22   In 1951, the Montana Safety-Responsibility Act,[2] now Title 61, Chapter 6, Part 1, was enacted. From its inception it contained the authorization for the exclusion of transported property set forth above. This portion of Title 61, Chapter 6, applies to those drivers who have "bad" records, and requires that they be insured. Between 1951 and 1979, only bad drivers were required to have liability insurance. Then, in 1979, § 61-6-301(1)(a), MCA, which in this case we call the MLPA, was enacted. It provides that every owner of a motor vehicle used and registered in Montana must provide a liability insurance policy covering such vehicle.

¶23   This Court has not previously decided the question of whether a property damage exclusion, which is allowed by § 61-6-103(5), MCA, also is a valid exception to coverage

---

[2]  Part 1, of Title 61, Chapter 6, is given the title Motor Vehicle Safety-Responsibility Act. Section 61-6-101, MCA. We have consistently held that the title of a statute is subordinate to its text in determining its effect. *Orozco v. Day* (1997), 281 Mont. 341, 348, 934 P.2d 1009, 1013; *ISC Distrib. Inc. v. Trevor* (1995), 273 Mont. 185, 196, 903 P.2d 170, 177; *Manufacturers Acceptance Corp. v. Krsul* (1968), 151 Mont. 28, 35, 438 P.2d 667, 671.

mandated by § 61-6-301(1)(a), MCA.

¶24    In *Transamerica Ins. Co. v. Royle* (1983), 202 Mont. 173, 656 P.2d 820, this Court reached the conclusion that an exclusion from coverage for an injured family member, in a mandatory liability policy, was unlawful because there was no exception provided in the statute and all persons were required to be covered.  In *dicta*, the *Royle* Court stated that Part 1 of Title 61, Chapter 6, was not controlling; Section 61-6-136, MCA, precluded any relationship between Part 1 and Part 3; Section 103 was independent from § 301(1)(a); and that cases decided prior to enactment of § 301(1)(a) in 1979 did not apply.  *Royle*, 202 Mont. at 176-77, 656 P.2d at 822-23.  However, the Court's specific holding was that the statutory restrictions on insurance policies contained in § 61-6-103, MCA, did not apply to policies purchased to fulfill the requirements of Part 3.  *Royle*, 202 Mont. at 177, 656 P.2d at 822-23.  The Court did not hold that an exclusion for property being transported, contained in § 61-6-103(5), MCA, would be valid in an assigned risk policy issued to one with a bad driving record under § 103, but such exclusion would not be valid in a policy issued to a good driver because it was prohibited by § 61-6-301(1)(a), MCA.  Such a result, which is incongruous with the intent of the MLPA, is exactly what Claimants argue for in this case.

¶25    Three years after the decision in *Royle,* the Court decided *Bain v. Gleason* (1986), 223 Mont. 442, 726 P.2d 1153.  In *Bain,* the Court considered the relationship between § 61-6-301(1)(a) and § 61-6-103, MCA, in connection with a derivative claim for loss of consortium.  The Court recognized the statutes should be considered together and stated:

> Plainly it is the public policy of this State, under § 61-6-301, MCA, and § 61-6-103, MCA, that every owner of a motor vehicle operated in Montana must procure a policy of insurance which continuously provides coverage up

to the limits set forth in the two statutes. The provisions of the two statutes are a part of every policy of motor vehicle insurance issued in this State under the mandatory law and if the provisions of the insurance policy countermand or diminish the statutory requirements, the policy nevertheless will be considered to provide the statutory requirements.

*Bain*, 223 Mont. at 447, 726 P.2d at 1156.

¶26   The *Bain* Court considered § 61-6-301(1)(a), MCA, in the context of § 61-6-103, MCA, and did not hold that the two provisions were independent of each other. *Bain* is consistent with an interpretation that § 61-6-301(1)(a), MCA, would allow an exclusion in a mandated insurance policy for property being transported by the insured.

¶27   In *Stutzman v. Safeco Ins. Co.* (1997), 284 Mont. 372, 945 P.2d 32, this Court, in connection with an exclusion for household members from underinsured motorist coverage, which is optional under the Motor Vehicle Safety-Responsibility Act pursuant to § 61-6-103(8), MCA, is not invalid as against public policy. The Court stated:

> Stutzman argues this Court should void the exclusionary language contained in the Safeco policy's definition of an underinsured motor vehicle on public policy grounds. Specifically, Stutzman argues that, pursuant to *Transamerica v. Doyle* [sic] (1983), 202 Mont. 173, 656 P.2d 820, household exclusion clauses in bodily injury liability policies are void. Although this Court may indeed invalidate a household exclusion clause which violates Montana's mandatory insurance law, there is no statutory mandate for underinsured motorist coverage in Montana. Pursuant to § 61-6-103(8), MCA, optional underinsured motorist coverage is not subject to the provisions of Montana's Motor Vehicle Safety Responsibility Act. Therefore, the parties may freely contract to produce exclusions or limitations on underinsured motorist coverage.

*Stutzman*, 284 Mont. at 380-81, 945 P.2d at 37.

¶28   Thus, even though it considered *Royle*, the Court, in effect, held that if an exception to required coverage was specified in § 61-6-103, MCA, it would be valid and there was no

9

violation of § 301(1)(a).

¶29    In *Babcock v. Farmers Ins. Exchange*, 2000 MT 114, 299 Mont. 407, 999 P.2d 347, we determined that a horse trailer being transported by the insured was validly excluded from insurance coverage. *Babcock* concerned whether the policy in question was ambiguous. The issue of whether coverage of the trailer was required by the MLPA was not raised. However, the Court held that the exclusion was valid. A result that an exclusion for transported property is valid under the MLPA is consistent with *Babcock*.

¶30    That transported property is excluded from the mandatory coverage provided to an insured is not inconsistent with the purpose and intent of the MLPA. The owners of the guard rail and the semi-tractor trailer units were protected with five times the amount of coverage required. It was Grimsrud and Wentz, who knowingly entrusted their snowmobiles to Hagel's driving, for whom the MLPA does not mandate coverage. They opted to take the risk, at least to the amount of the loss not within their personal coverage, when they entrusted their friend with the care of their property. We conclude that an exclusion from motor vehicle liability insurance coverage that meets the requirements of § 61-6-103(5), MCA, is not invalid under § 61-6-301(1)(a), MCA.

¶31    State Farm denied coverage to its insured, Hagel, for property transported by him pursuant to a valid exclusion in its policy.

10

¶32 **Did the District Court err in not concluding that State Farm had a duty to defend Hagel in this lawsuit?**

¶33 Hagel argues that State Farm unreasonably refused to defend him, and therefore, should be liable for the costs of defense as well as the judgment against him. *See Farmers Union Mutual Insurance Company v. Staples*, 2004 MT 108, 321 Mont. 99, 90 P.3d 381. He bases this claim on the fact that State Farm's policy included an agreement to defend him in addition to providing him coverage. Accordingly, Hagel argues that State Farm had a contractual duty to provide him with a defense prior to exhausting the policy limits by paying other claims, thereby leaving him with no defense when the Claimants in this case sued him. He further argues that State Farm is estopped from denying him a defense because it filed a belated Notice of Appearance on his behalf on July 21, 2003, in spite of having denied him a defense all along, thereby admitting that it wrongfully denied him a defense.

¶34 An insurer's duty to defend its insured is determined by the language of the insurance policy. *Burns v. Underwriters Adjusting Co.* (1988), 234 Mont. 508, 511, 765 P.2d 712, 714. If there is no coverage under the terms of the policy based on the facts contained in the complaint, there is no duty to defend. *Burns*, 234 Mont. at 511, 765 P.2d at 714; *Staples*, ¶ 21. We have determined that under the facts of this case, the snowmobiles in question were not covered under Hagel's State Farm auto policy. Accordingly, State Farm had no duty to defend Hagel in a suit to recover for their loss. *See Staples*, ¶ 21.

¶35 This Court has consistently held that where the "language employed in an insurance contract is clear, the language controls," and the court must enforce it as written. *Fire*

*Insurance Exchange v. Tibi* (D. Mont. 1995), 51 F. Supp.2d, 1065, 1069; *Counterpoint, Inc. v. Essex Ins. Co.*, 1998 MT 251, ¶ 13,  291 Mont. 189, ¶ 13, 967 P.2d 393, ¶ 13; *Schell v. Peters* (1966), 147 Mont. 21, 27, 410 P.2d 152, 155.  Since there is no ambiguity in this case, we conclude that the District Court did not err in not granting Hagel's motion for summary judgment that State Farm had a duty to defend him.

¶36    State Farm is not estopped from denying Hagel a defense.  Estoppel is an equitable doctrine that requires the damaged party to detrimentally rely on the party from whom they seek relief.  *See Selley v. Liberty Northwest Ins. Corp.*, 2000 MT 76, ¶ 10, 299 Mont. 127, ¶ 10, 998 P.2d 156, ¶ 10.  Without evidence that Hagel detrimentally relied on some statement or admission by the insurer, coverage will not be extended beyond that which was provided for in the policy.  *See Lee v. USAA Cas. Ins. Co.,* 2001 MT 59, 304 Mont. 356, 22 P.3d 631.

¶37    The record here is devoid of any evidence that Hagel relied on State Farm for a defense.  State Farm settled the claims of other damaged parties without litigation.  State Farm repeatedly notified Hagel that the policy in question provided no coverage for the snowmobiles, and that it would not defend him in any action brought by these Claimants to recover for their loss.  Further, Hagel entered his Confession of Judgment knowing that State Farm had filed its Motion to Intervene in the case.  By his own admission, Hagel confessed judgment to decrease his exposure to damages, and to limit costs of suit and attorney's fees, because he knew that State Farm had no intention of defending him even though it filed a Motion to Intervene in this suit.  Under these circumstances, Hagel's claim that State Farm represented to him that they intended to defend him, that he relied on such representation,

and that State Farm admitted its wrongdoing by filing a Notice of Appearance, is disingenuous at best.

## IV. CONCLUSION

¶38     The judgment of the District Court is affirmed.


/S/ JOHN WARNER


We Concur:


/S/ KARLA M. GRAY
/S/ PATRICIA O. COTTER
/S/ W. WILLIAM LEAPHART


Justice Jim Rice dissenting.

¶39     I dissent.  I submit that the Court has failed to properly apply all of the controlling statutes.

¶40     In ¶ 23, the Court correctly frames the precise statutory issue–"whether a property damage exclusion, which is allowed by § 61-6-103(5), MCA [the Montana Safety-Responsibility Act, enacted in 1951], also is a valid exception to coverage mandated by § 61-6-301(1)(a), MCA [the Mandatory Liability Protection Act, enacted in 1979]."

¶41     The Court correctly notes that the Safety-Responsibility Act was enacted to require only "bad drivers" to obtain liability insurance.  *See* ¶ 22.  Other drivers, presumably "good drivers," could voluntarily obtain liability insurance, but were not required to do so by the Safety-Responsibility Act.  This distinction between "bad" and "good" drivers still exists

13

within the Safety-Responsibility Act, which requires that drivers who have had their licenses *revoked* must obtain "proof of financial responsibility" before their driving privileges are restored. Section 61-6-131, MCA. Such proof, consisting of either a certificate of insurance, certificate of self-insurance, bond or deposit of money or securities, *see* § 61-6-132, MCA, must be submitted to the Department. Liability policies submitted as "proof of financial responsibility" must be certified pursuant to §§ 61-6-133 or -134, MCA. The requirement to provide "proof of financial responsibility" does not extend to drivers whose privileges have not been revoked.

¶42 Consistent with these requirements, the Safety-Responsibility Act defines a "'motor vehicle liability policy,' *as the term is used in this part*," as meaning "an owner's or operator's policy of liability insurance, *certified as provided in 61-6-133 or 61-6-134 as proof of financial responsibility . . . .*" Section 61-6-103(1), MCA (emphasis added). Unlike policies obtained for purposes of the Safety-Responsibility Act, liability policies obtained by "good" or "unrevoked" drivers in order to satisfy § 61-6-301(1), MCA, are not submitted to the Department to certify proof of financial responsibility. Indeed, State Farm's policy here recognized this distinction. State Farm Montana Policy Form 9826.4, Section I–Liability –Coverage A, Financial Responsibility Law, p. 11.

¶43 The statutory distinction between these two liability policies is cemented by another provision in the 1951 Safety-Responsibility Act, now codified as § 61-6-136(1), MCA, which is overlooked by the Court's opinion. It provides:

**Other policies not affected.** (1) This part shall not be held to apply to or affect policies of automobile insurance against liability which may now or hereafter be required by any other law of this state . . . .

This provision indisputably draws a line between the Safety-Responsibility Act and other legislative acts which require liability insurance, such as the Mandatory Liability Protection Act, adopted twenty-eight years later. We acknowledged this separation in *Transamerica Ins. Co. v. Royle* (1983), 202 Mont. 173, 177, 656 P.2d 820, 822: "Section 61-6-136, MCA, precludes any relationship between the two parts." We thus held that "[t]he two parts are independent." *Royle*, 202 Mont. at 177, 656 P.2d at 822.

¶44 The Court offers, accurately, that our subsequent decision in *Bain* "did not hold that the two provisions were independent of each other." *See* ¶ 26. However, the support which the Court draws for its holding from this negative inference is insufficient, in my view, to override the plain language of the statutes themselves, which *Royle* correctly explained. Likewise, the Court notes in ¶ 27 that, in *Stutzman*, we stated that "[p]ursuant to § 61-6-103(8), MCA, optional underinsured motorist coverage is not subject to the provisions of Montana's Motor Vehicle Safety-Responsibility Act." This statement from *Stutzman* was surely correct as to the Safety-Responsibility Act, but, unfortunately, that Act was not at issue in *Stutzman*. Stutzman had argued for application of the Mandatory Liability Protection Act (§ 61-6-301, MCA), not the Safety-Responsibility Act. While the Court may have intended to refer to the Mandatory Liability Protection Act, the error is more than one of nomenclature. By this brief reference, the Court incorrectly fused provisions of two legislative acts, without discussing either the distinctions made by their very terms or *Royle*'s

15

analysis that they were separate and independent.[3] Lastly, *Babcock* involved a first party claim for liability coverage for a damaged trailer made after the insured had already received payment under the policy's collision coverage. *Babcock*, ¶¶ 7-8. Further, the issue there was one of policy interpretation; the statutes were not at issue.

¶45 Consequently, I believe that the mandatory coverage provision of § 61-6-301(1)(a), MCA, is controlling here. The claims made by plaintiffs are for "loss[es] resulting from liability imposed by law for bodily injury or death or damage to property suffered by any person caused by maintenance or use of a motor vehicle." As such, Hagel's policy was required to provide liability coverage for these claims.

¶46 I do not disagree with the observation in State Farm's brief that "[i]t is illogical and inequitable if the property of persons being transported by 'bad drivers' under the Motor Vehicle Safety-Responsibility Act may be excluded from liability coverage while property being transported by the majority of Montana's insureds may not be likewise excluded, under Montana's [Mandatory Liability Protection Act.]" However, I believe the Acts create this very distinction, which has not been erased by the treatment of the statutes in our cases. It may be that policymakers once envisioned providing a different kind of liability policy for high risk drivers, but, for whatever reason, the statutes create the distinction, and I believe reversal is required.

---

[3] Although reference to § 61-6-103(8), MCA, may not have been necessary to our conclusion in *Stutzman* that underinsured motorist coverage was not statutorily mandated, the greater error for purposes of this case is the confusion caused regarding the two Acts.

16

/S/ JIM RICE