GREEN, APPELLANT, *v.* MILWAUKEE MECHANICS' IN-
SURANCE CO., RESPONDENT.

GREEN, APPELLANT, *v.* ROCKY MOUNTAIN FIRE IN-
SURANCE CO., RESPONDENT.

GREEN, APPELLANT, *v.* SAINT PAUL FIRE AND MARINE
INSURANCE CO., RESPONDENT.

(No. 5,973.)

(Submitted November 15, 1926.   Decided December 3, 1926.)

[252 Pac. 310.]

*Fire Insurance—Loss by Explosion—Burden of Proof—Trial—*
*Nonsuit—When Proper—Evidence—Hypothetical Questions*
*—When Improper.*

Fire Insurance—When Insurer Liable for Loss Occasioned by Explosion.

1.   Under a fire insurance policy which makes the insurer liable
for all direct loss or damage by fire but exempts him from damages
caused by an explosion of any kind unless fire ensues, where the
explosion is caused by a preceding fire, the insurer is liable both
for the loss caused by the fire and also that caused by the ex-
plosion, the fire in that event being the proximate cause of the
whole loss and the explosion a mere incident.

Same—Loss from Explosion Caused by Pre-existing Fire—Burden of
Proof.

2.   Where the only damages claimed under a fire insurance policy,
which exempted the insurer from damages caused by an explosion
unless fire ensued and in that event liability for damages attached
only when caused by fire, were those caused by fire, an explosion as
an incident to a pre-existing fire, the burden was on plaintiff to
show a pre-existing fire and that the fire was the proximate cause
of his loss.

Same—Loss from Explosion—Pre-existing Fire—Evidence—Insufficiency.

3.   Evidence of plaintiff examined and *held* insufficient to show a
pre-existing fire of sufficient intensity to cause the explosion of an
acetylene tank in a machine-shop, it, on the contrary, showing
that there could have been an explosion without the application
of external heat, and that therefore the court properly granted a
nonsuit.

---

1.   Liability of property insurer as affected by explosion, see notes
in 23 Am. St. Rep. 915; 133 Am. St. Rep. 1091; 13 A. L. R. 883; 44
A. L. R. 870; 19 L. R. A. 597.   See, also, 14 R. C. L. 1218.
2.   See 14 R. C. L. 1437.

Trial—Nonsuit—When Proper.

4. While on motion for nonsuit every fact is deemed to be proved which plaintiff's evidence tends to establish and must be viewed in the light most favorable to him, the record must contain competent testimony fairly tending affirmatively to prove the allegations of his complaint, the burden resting upon him not being satisfied if the conclusion to be reached from the testimony is merely a matter of conjecture, consonant with the truth of his allegations and some other theory inconsistent therewith.

Evidence—Expert Witnesses—Hypothetical Questions—When Improper.

5. An objection to a hypothetical question asked an expert which assumes facts unsupported by the evidence was properly sustained.

[1]  Fire Insurance, 26 C. J., sec. 439, p. 345, n. 14.
[2]  Fire Insurance, 26 C. J., sec. 729, p. 519, n. 70.
[3]  Fire Insurance, 26 C. J., sec. 762, p. 545, n. 43.
[4]  Trial, 38 Cyc., p. 1555, n. 7.
[5]  Evidence, 22 C. J., sec. 795, p. 707, n. 22.

*Appeal from District Court, Fergus County; John C. Huntoon, Judge.*

CONSOLIDATED ACTIONS by Andrew Green against the Milwaukee Mechanics' Insurance Company, the Rocky Mountain Fire Insurance Company and the St. Paul Fire & Marine Insurance Company, consolidated for trial. From a judgment of nonsuit, plaintiff appeals. Affirmed.

*Mr. Ralph J. Anderson* and *Mr. Rufus Hopkins,* for Appellant, submitted a brief and argued the cause orally.

The courts have interpreted the provision of the policy involved here as follows: That where the explosion is caused by a preceding hostile fire which during its progress in the insured premises causes an explosion, the insurer is liable both for the loss caused by the fire and also that caused by the explosion, since the fire is the proximate cause of the whole loss and the explosion is a mere incident. (26 C. J. 345; 14 R. C. L. 1218; *Rossini* v. *St. Paul Fire & Marine Ins. Co.,* 182 Cal. 415, 188 Pac. 564; *Wheeler* v. *Phenix Ins. Co. of Brooklyn,* 203 N. Y. 283, Ann. Cas. 1913A, 1297, 38 L. R. A. (n. s.)

5. See 11 R. C. L. 579.

474, 96 N. E. 453; *German-American Ins. Co.* v. *Hyman,* 42 Colo. 156, 16 L. R. A. (n. s.) 77, 94 Pac. 27; *Western Ins. Co. of Pittsburgh* v. *Skass,* 64 Colo. 342, 171 Pac. 358; *Washburn* v. *Miami Valley Ins. Co.,* 2 Fed. 633.)

In such a case the burden rests on the company to prove that the loss, or part thereof, falls within the exception as found in the policy. (*Rossini* v. *St. Paul Fire & Marine Ins. Co.,* 182 Cal. 415, 188 Pac. 564; *German-American Ins. Co.* v. *Hyman, supra.*) It was contended in the court below that the rule stated above with reference to the burden of proof was not applicable in this case because of the allegations in the complaint wherein it is alleged that a fire caused the explosion. In other words, it was argued that this allegation in the complaint had the effect of shifting the burden of proof, under the facts as proven and pleadings as alleged, from the defendant to the plaintiff. We contend, however, that the pleadings in this case do not have that effect, and we are supported in this contention by authorities where similar pleadings were had in explosion exemption cases and where the courts held that they did not operate to shift the burden of proof. (*Stephens* v. *Fire Association of Philadelphia,* 139 Mo. App. 369, 123 S. W. 63; *Western Assur. Co.* v. *J. H. Mohlman Co.,* 83 Fed. 811, 40 L. R. A. 561, 28 C. C. A. 157.)

The plaintiff's proof showed burning waste in the vicinity of the generator following the explosion; great quantities of black smoke in the room where the explosion occurred; that the gas in the generator would not explode under the conditions proven to exist except by the aid of external fire, and that, had the pressure in the generator from some unknown cause and by reason of the failure of the safety-valve to operate, obtained such a pressure that the walls of the generator gave way, no fire would ensue, and that the gas would not become ignited. In the case of *Wheeler* v. *Phenix Ins. Co., supra,* the facts were not as strong as they are in this case, in that, in that case, no one saw the fire either preceding or fol-

lowing the explosion. There the court held that the trial court was in error in granting a motion for nonsuit.

*Messrs. Cooper, Stephenson & Hoover* and *Messrs. Ayers & Toole,* for Respondents, submitted a brief; *Mr. W. H. Hoover* argued the cause orally.

Plaintiff's whole case would seem to be summarized in this way: There was an explosion of the acetylene generator. After the explosion there was observed a small flame in a pile of waste near the generator. From the fact that the fire existed after the explosion, it may be presumed it existed before. If such were the case, it may have caused the explosion. Our contention below was and now is that the presence of the smoldering waste after the explosion is not evidence of a precedent fire and that such a fire, even if precedent, could not cause the explosion. The facts alone demonstrate this too clearly to require extended argument or citation of authorities.

This is not a case where plaintiff has made out a *prima facie* case of fire loss and defendants are attempting to exonerate themselves by the exception clause in the policy. It is a pure case where there was no fire at all that had anything to do with this loss, and, of course, the policies do not insure the plaintiff against explosion loss. He could have purchased explosion insurance if he wanted that. Even if it were a case within the purview of the numerous cases cited by plaintiff in his brief, his own case would so clearly exonerate the defendants as to be complete proof of the exception defense, even if the burden of proof were on the defendants. The provision in the policies that the company shall not be liable for loss caused by explosion has received attention from many courts. (See 26 C. J. 344, 345.) The "preceding hostile fire" referred to in C. J. is such a fire as would ordinarily be insured against under the terms of the policy and of which the explosion is a mere incident. (See *New Hampshire Fire Ins. Co.* v. *Rupard,* 187 Ky. 671, 220 S. W. 538; *Home Lodge Assn.* v. *Queens Ins. Co.,* 21

S. D. 165, 110 N. W. 778; *German-American Ins. Co.* v. *Hyman,* 42 Colo. 156, 16 L. R. A. (n. s.) 77, 94 Pac. 27; *Transatlantic Fire Ins. Co.* v. *Dorsey,* 56 Md. 70, 40 Am. Rep. 403; *Mitchell* v. *Potomac Ins. Co.,* 183 U. S. 51, 46 L. Ed. 74, 22 Sup. Ct. Rep. 22; *Heuer* v. *Northwestern National Ins. Co.,* 144 Ill. 393, 19 L. R. A. 594, 33 N. E. 411.)

The primary burden of proof is on the plaintiff to show that there was a fire loss. (33 C. J. 111; *Western Assur. Co.* v. *Mohlman,* 83 Fed. 811, 40 L. R. A. 561, 28 C. C. A. 157.)

Such cases as *Rossini* v. *St. Paul Fire & Marine Ins. Co.,* and *German-American Ins. Co.* v. *Hyman,* referred to by plaintiff, do not aid him, because in each of those cases and each of the other cases cited by the plaintiff there was, in fact, a fire and a fire loss. Now, where there is a fire and a fire loss, if the company desires to claim exemption from a part of the loss which it claims was due to an explosion and not to fire, the burden is on it to prove the exemption. (*Rossini Case,* above.)

HONORABLE HENRY G. RODGERS, District Judge, sitting in place of MR. JUSTICE HOLLOWAY, absent on account of illness, delivered the opinion of the court.

These causes were consolidated for trial. The actions were instituted to recover on fire insurance policies covering the same property and containing the same provisions and covenants. The issues as framed by the pleadings are identical in each case. At the close of plaintiff's evidence the court sustained a motion for a nonsuit, and judgment was entered accordingly. The court having overruled a motion for a new trial, plaintiff appeals from the judgment.

The points to be decided are: Did the court err in sustaining defendants' motion for a nonsuit, and did the court err in sustaining defendants' objection to a hypothetical question propounded to an expert witness?

The complaint states that the property insured by the policy was damaged and portions thereof destroyed as a result of a

fire in the building, and that by reason of the fire coming in contact with a certain acetylene gas-tank and generator located on the premises, the acetylene gas-tank and generator were caused to explode, and by reason of the explosion, which explosion was caused by the fire and was a direct consequence of the fire, the building and other property insured in the policy were damaged and destroyed, and that the damage and destruction of the property were not caused directly or indirectly by any cause or causes which by the terms of the policy are excepted therefrom. A copy of the policy is annexed to the complaint and by reference made a part thereof. The policy insured the plaintiff "against all direct loss or damage by fire, except as hereinafter provided." The exemption clause exempts the insurer from damages caused by an explosion of any kind, unless fire ensues, and in that event liability for damages attaches only when caused by fire.

A correct interpretation of the above provision where the [1, 2] explosion is caused by fire is stated in 26 C. J. 345, as follows: "Where, however, the explosion is caused by a preceding hostile fire during its progress in the insured premises, the insurer is liable both for the loss caused by the fire and also that caused by the explosion, since the fire is the proximate cause of the whole loss and the explosion is a mere incident." (14 R. C. L. 1218; *Rossini* v. *St. Paul Fire & Marine Ins. Co.,* 182 Cal. 415, 188 Pac. 564; *Wheeler* v. *Phenix Ins. Co.,* 203 N. Y. 283, Ann. Cas. 1913A, 1297, 38 L. R. A. (n. s.) 474, 96 N. E. 453; *German-American Ins. Co.* v. *Hyman,* 42 Colo. 156, 16 L. R. A. (n. s.) 77, 94 Pac. 27; *Western Ins. Co.* v. *Skass,* 64 Colo. 342, 171 Pac. 358.)

Plaintiff contends that the burden of proof rested on defendants to show that a fire did not exist prior to the explosion, and in support of this contention he cites authorities in all of which an action was being prosecuted to recover for loss directly caused by fire. We have no doubt as to the rule insisted upon being applicable to the issues as framed in the cases cited,

but the rule is not applicable to this case, in which the damages claimed are for losses directly caused by an explosion as an incident to a pre-existing hostile fire and no damages are claimed as a direct result of a pre-existing or ensuing fire. The establishment by plaintiff of a *prima facie* case could not be attained by going no further than establishing that there had been an explosion, for the plaintiff was not insured against loss caused by an explosion. The burden was on the plaintiff to show in this case a pre-existing fire, and that the fire was the proximate cause of the injury.

The building was used as a machine-shop; the acetylene generator was located in the northeast corner of the back room [3] and had not been used for a week or ten days immediately prior to the explosion. It was seven feet tall, cylindrical in shape, and twenty-four inches in diameter. The chamber containing carbide was the top one, twenty-four inches in depth; the lower chamber, sixty inches in depth, on the morning of the explosion had water in it to the depth of thirty-three inches in a frozen condition, leaving a space for the gas contained in the generator in depth twenty-seven inches. The generator was equipped with a filling cap on top where the carbide was put into the chamber, which chamber had a funnel-shaped bottom. A gravity motor operated by weights furnished power to a shaft rotated by a series of four butterfly valves. When the shaft revolved, the butterfly valves would pick the carbide from the pipe in the carbide chamber and drop it into the water and the gas would accumulate on top of the water. A safety valve was on top of the generator, connected with the gas space, adjusted so that the gas would escape when the pressure reached sixteen pounds and be carried through a pipe to the atmosphere above the roof. An automatic valve shut off the supply of carbide by shutting off the motor at ten pounds' pressure. There was an additional safety device—a butterfly trip—which of a night would be closed by the operator, so that, should the motor start, the carbide could

not get out of the carbide chamber and into the gas and water chamber. This safety device was applied every night up to the time it was last used. The gas was removed from the generator through a valve. There was a flash-back chamber filled with water, through which the gas would bubble as it was released, and no fire could flash from the torch back into the chamber of the generator. A quarter-inch pipe connected with the valve through which the gas was taken for use and carried the gas to the front room when it was used there, and when used in the back room a hose conducted the gas from the generator to where it was used. The hose was not connected with the generator at the time of the explosion. When the generator was shut down overnight, in the morning, as a rule, the pressure held about the same according to the weather; if the weather was real cold it would decrease, if it was warm the pop-off valve would take care of the heat expansion. If the machine was shut down for a week or ten days the gas pressure would gradually decrease. The back room was heated by a furnace in the basement. The room had been heated the day before, but there was no fire in the furnace the morning of the explosion; the room was cold, the outside temperature below zero, and the temperature in the room approximately the same. There was a coal pile about a foot deep next to the generator and separated from it by a board, and on top of the coal was used waste saturated with oil and grease, estimated to be from six to eighteen inches deep, in quantity from one to two bushels, and estimated by the witnesses as being at various distances from the generator—from six inches to two feet.

A witness testified: "At the time of the explosion I was in the alley at the rear of the building. I saw a flash, glare, blaze of light, a flame through the windows; the flash was in the vicinity of the generator, and I dropped flat on the ground and heard a report. I could not see there was any perceptible interval of time between the time I saw the flash and heard the explosion and threw myself on the ground. I presume that

the flash, the explosion, and my ducking was just as near instantaneous as you could make it. As soon as it was over I walked to the back door and stepped inside and hollered to know if anybody was hurt. The room was full of black smoke. I could not see any distance. Someone answered me, and as soon as he answered I went out."

After the explosion the waste was on fire. Relative to this one witness, who was in the front room at the time of the explosion, testified: "At the time I did not observe any flame in the air. I could not observe anything in the rear room but smoke. It was very dark—black heavy smoke. After the explosion there was fire burning in the back room; the waste was burning; the waste was giving off a common flame; it was not much of a flame, it was more of a smudge; the fire chief stamped on it and put it out. There might have been a little flame to it, but waste does not flame anyway; it will just smoulder. That was the only fire in the back room that I saw after the explosion; there was not any fire in the front room except in the stove."

Goodrich testified: "At the time of the explosion I did not observe any flame in the front room and I could not observe conditions in the back room. After the explosion there was waste burning in the back room; it was not a large blaze. It was blazing I do not know how high; it could not have covered a very large space, but it was just a small flame there. I saw the flame possibly two, three, or four minutes after the explosion; it took that time for the smoke to clear out before you could see back there, and I did not venture in there until after the smoke had cleared away. I did not do anything to the waste; the fire chief and others came in and about that time they proceeded to put out the fire and done whatever was done. I did not touch it. I did not pay much attention to it, as it was just a matter of a little waste, and on top of a pile of coal, and I did not see where it could do much damage. I was out in the back room before the explosion and carried

some ashes out through the back room, and I was in the back room when Brew was starting his truck [estimated by the witness to have been ten or fifteen minutes before the explosion], and those were the only times I was in the back room that morning. I did not observe any evidence of fire prior to the explosion. The fire chief arrived about five minutes after the explosion." No one testified to the distance between the generator and the fire in the waste.

Plaintiff testified: "I was not present at the time this explosion happened; I could not see anything that was fired on the front or the rafters where there was wood. In the first place there wasn't an awful lot to burn. The woodwork of the building was not burned. There was not any evidence of fire around where I worked. There was evidence of fire around the machine, of course. It didn't burn the rafters, but it was awful smoky. There was a sooty discoloration on the rafters the color of black smoke. There was no evidence of any contact of flame with the rafters, walls, partition. There could not have been any contact with the walls because they were brick. They were black, of course. It was the explosion itself that caused the damage I am referring to."

Stone, an expert witness, testified: "Q. Assuming, Mr. Stone, that you have an acetylene generator, known as the Economy generator, which is constructed with a carbide chamber on top and that it is connected with the chamber below by a butterfly valve, this chamber below being sixty inches in height and containing water to a depth of about thirty-six inches, the generator being equipped with a safety valve that will blow off at a pressure of sixteen pounds, and this generator being located in a room in which there has has been no heat since the day preceding, the time in question being at about 9 o'clock in the morning of the following day, and the safety device on the generator which controls the butterfly valve had been placed so that no carbide could be fed down into the chamber, the outside temperature being below zero, the temperature in

the room being approximately the same as the outside, and the water in the generator being frozen, the pressure on the gas being anywhere from sixteen pounds down to the pressure of the atmosphere, and prior to the explosion a large sheet of flames was observed immediately preceding the explosion, would you say under those facts and circumstances, in your opinion, it would be possible for the acetylene gas in the generator to explode without the application of fire? (Amending the question, however, to state that the flames observed were immediately preceding or instantaneous with the explosion.)    A. It is my opinion that it could not explode except by the external flame.'' On cross-examination he testified: ''It is a property of acetylene that at certain pressures it will explode, break down of its own accord, without the application of any external fire.    The combination of the carbide and water in a container will, unless released, generate sufficient pressure to explode. The chemical reaction between the carbide and the water would raise the temperature as well as the pressure to an explosion point, but the carbide would have to combine rapidly with the water in order to accomplish that.    If heat is not applied at too rapid a rate the pop-off valve would carry the gas off.    It is not my idea that heat applied to the outside of this generator would expand that gas fast enough so it would not get out through the pop-off valve.    When mixed with air a heat of 896 degrees Fahrenheit would have to be applied to acetylene to get it to burn.    There would have to be applied to acetylene in a container in which no air was present, in order to get it to decompose, burn, or consume, approximately 1,436 degrees Fahrenheit.''

Robinson, an expert witness, in reply to the same question propounded to Stone on direct examination, replied: ''A. You want to know whether it will explode without the aid of a flame?    Q. Without the aid of external fire.    A. I don't see how it can.'' On cross-examination he testified: ''If there had been a generation in the tank caused some way or other,

the pressure could have risen inside of the tank and caused this explosion without any external flame at all. If the carbide dropped down into the water in large quantities quickly for some reason or other, gas and pressure would be generated. I don't think that any kind of an ordinary flame applied to the tank would heat water up to a point first to melt the ice and then get it so hot as to expand the gas in the gas chamber above the ice and water and make it go so fast that it wouldn't get off through the pop-off valve.''

The inference that might be drawn from the opinions of the expert witnesses that there was of necessity a pre-existing fire of sufficient intensity to cause the explosion and that the generator could not explode without the application of external heat, expressed in response to a hypothetical question, is wholly unfounded when each witness' testimony is considered in its entirety. On the contrary, it clearly appears that there could have been an explosion without the application of external heat.

In considering this case we have borne in mind the rules so [4] often announced by this court that ''on motion for nonsuit every fact is deemed to be proved which the evidence tends to establish, and must be viewed in the light most favorable to plaintiff,'' but it is also true, as stated in *Park* v. *Grady,* 62 Mont. 246, 204 Pac. 382: ''The record must contain competent testimony fairly tending to affirmatively prove the allegations of the complaint. The burden of proof is still upon the plaintiff, and is not satisfied if the conclusion to be reached from the testimony offered is merely a matter of conjecture. If such conclusion be equally consonant with the truth of the allegations, and with some other theory inconsistent therewith, it then becomes a mere conjecture, and the rule of the burden of proof is not satisfied''—citing *Shaw* v. *New Year Gold Mines Co.,* 31 Mont. 138, 77 Pac. 515.

It affirmatively appears from the evidence that there was no other fire except the smudge or small flame in the waste, dis-

covered after the explosion, and that it could not have heated the generator at the rapidity and to that degree of heat necessary to cause the explosion. The evidence does not tend to support any reasonable conclusion that would have justified a submission of this case to the jury.

The assignment that the court erred in sustaining plaintiff's [5] objection to a hypothetical question asked of the expert witness Stone cannot be sustained. The question assumed facts unsupported by any evidence.

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, STARK and MATTHEWS concur.