McDONALD et al., Respondents, v. ROYAL INSURANCE
COMPANY, LTD., Appellant.

(No. 7,285.)

(Submitted November 14, 1934.   Decided December 17, 1934.   Opinion
on Rehearing filed January 14, 1935.)

[40 Pac. (2d) 1005.]

*Mr. R. F. Gaines,* for Appellant, submitted a brief and argued the cause orally.

*Mr. H. Lowndes Maury,* for Respondents, submitted a brief and argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

On consideration of plaintiffs' motion for a rehearing, the opinion herein promulgated December 17, 1934, is withdrawn and the following opinion substituted therefor:

The defendant, Royal Insurance Company, Limited, has appealed from a judgment entered in favor of the plaintiffs in an action on a fire insurance policy issued by it to the plaintiff Murdock McDonald, but payable, in the event of loss, to one Frederick Bawden, mortgagee. Bawden died, and his personal representatives were made coplaintiffs with McDonald.

The policy insured the McDonald premises against "all direct loss or damage by fire," and expressly provided that "this company shall not be liable for loss caused, directly or indirectly (unless the fire ensues, and in that event, for the damage by fire only) by explosion of any kind. * * * "

The evidence, viewed in the light most favorable to plaintiffs, is as follows: The second floor apartment of the McDonald house, consisting of three rooms and a bathroom, was, during the time covered by the testimony, occupied by Helen Gordon, tenant, who had two men roomers, one of these being Mike McGlinn. The night of December 9, 1932, was very cold, and Mrs. Gordon remained up until 4 A. M. in order to keep fires going in the kitchen range and a heating stove in the front room. At 4 A. M. she "put a fire in the stove" and retired; at 5:30 McGlinn arose and replenished the fire, and did so again at 9:30. Some time between 10:30 and 11 A. M. Mrs. Gordon went to the kitchen and discovered that the top of the range and the "stovepipe" were red hot and

that the wainscoting back of the range was "red" and "smoking"; in other words, was charring or burning without flame. She threw several pails of water on the woodwork and stovepipe, and some of the water ran down on the stove. She testified that she got the water from "the faucet," and that both the hot and cold water were running. Having extinguished the fire, Mrs. Gordon went to the front room, where she met McGlinn and advised him of what had occurred, and, while the two were still in the front room, the range exploded with such force as to render it more round than square, throw the lids about the room, break pipe connections even in the bathroom, and break two or three windows in the apartment. The total loss or damage amounted to $286, which damage to the extent of $29.50 was caused by the fire and the remainder by breakage, soot and water resulting from the explosion.

Liability to the extent of the loss by fire being admitted, the question for solution is, Does the evidence support the verdict and judgment for the additional loss and damage caused by the explosion?

While the exemption clause in the policy attempts to confine the recovery to the damage done by fire alone, the correct interpretation of the clause is that, where an explosion is caused by a "hostile fire," the insurer is liable both for the damage done by fire and the explosion, as the fire is the proximate cause of the loss and the explosion but an incident. (*Green* v. *Milwaukee Mechanics' Ins. Co.*, 77 Mont. 505, 252 Pac. 310; *Waters* v. *Merchants' Ins. Co.*, 11 Pet. 213, 9 L. Ed. 691; 26 C. J. 344, and cases cited.)

But this interpretation constitutes an exception to the general rule that, where the parties have included in the policy an agreement such as is contained in the exemption clause above, the insurer is exempt from liability for damages caused by explosion (26 C. J. 344), and, in such a clause, the phrase "by explosion of any kind" is not intended to refer to the agency which produces the explosion, but has reference to the kinds of material which explode. (*Wheeler* v. *Phenix Ins. Co.*, 203 N. Y. 283, 96 N. E. 452, Ann. Cas. 1913A, 1297, 38 L. R. A. (n. s.) 474.) In the instant case the explosive

"material" was manifestly the water-back installed in the range.

Further, the exception is based upon the fact that the explosion is caused by a pre-existing "hostile" fire, i. e., a fire not intentionally started; a fire in a stove, a lighted match, lamp or gas jet is a friendly fire, and damage incident to an explosion caused by these does not result in liability under the exemption clause. (4 Cooley's Briefs on Insurance, 3013–3028; 4 Joyce on Law of Insurance, 4718–4722.)

Where the policy insures against "direct loss or damage by fire," and contains no provision with reference to explosions, the question as to whether the fire causing the damage suffered was a friendly fire or a hostile one is not involved, and under such a policy the insurer has been held liable for the damage done by an overheated furnace, although no part of the property damaged burst into flames. (*O'Connor* v. *Queen Ins. Co.*, 140 Wis. 392, 122 N. W. 1038, 1122, 133 Am. St. Rep. 1081, 7 Ann. Cas. 1118, 25 L. R. A. (n. s.) 501.) In that case, however, the court pointed out that decisions on policies containing the exemption clause here considered were not in point.

Here we have a friendly fire in the kitchen range, which, being neglected, caused a slight fire in the rear of the range. The fire in the woodwork might be termed a "hostile" fire, but, manifestly, it did not cause the explosion. The plaintiffs did not attempt to demonstrate what caused the explosion; on the other hand, the defendant produced expert witnesses who testified that the explosion was a frozen water-back explosion. If this be so, no liability arose, as the evidence precludes a finding that a fire ensued as a result of the explosion.

Mrs. Gordon's statement that both the hot and cold water were running before the explosion would negative the testimony that the water-back was frozen; but even discarding the testimony of the experts on this subject does not greatly aid the plaintiffs; the jury is then left to speculation and conjecture as to the cause of the explosion, and the rule that a verdict cannot be based on speculation and conjecture is too well established to require the citation of authority.

If the water-back exploded because of the overheated condition of the range, and we cannot say from the record whether such an explosion is possible, still the explosion would be the result of a friendly, rather than a hostile, fire. The only remaining possibility for consideration is that, in some manner, the range exploded by reason of the water which ran down upon it in its overheated condition. If the record warranted an implied finding to this effect, the verdict might be sustained on the theory that the damage was done in an attempt to extinguish the hostile fire; the rule being that the fire is the proximate cause of all damage done in putting it out. (26 C. J. 342, and cases cited.) However, the plaintiffs introduced no testimony warranting such a finding, and their counsel interrogated the expert witnesses on cross-examination, only to be met with the positive assurance that such a result would be impossible.

Counsel for plaintiffs did elicit testimony from one of the experts, and a concurrence by the other, that it was possible for the creation of a condition which would cause an explosion of the range caused by an external fire, but the condition referred to called for an intensely hot fire burning for a long time, which condition was not shown to have existed at the time in question; indeed, the only external fire did no more than to deeply char the woodwork back of the range. It is therefore manifest that the evidence does not support the verdict, and, consequently, the judgment cannot stand in its entirety.

As the defendant admitted liability for the damage caused by the fire and the amount thereof, $29.50, is agreed upon, the plaintiffs are entitled to judgment for that amount and no more. The judgment is reversed and the cause remanded to the district court of Silver Bow county, with direction to enter judgment in accordance with this opinion. The appellant shall recover its costs on this appeal.

ASSOCIATE JUSTICES STEWART and ANDERSON concur.

MR. CHIEF JUSTICE SANDS and MR. JUSTICE MORRIS take no part in the foregoing opinion.