FILED

03/16/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0052

DA 20-0052

## IN THE SUPREME COURT OF THE STATE OF MONTANA

2021 MT 67

GARY AND CAROLYN KAUL,

      Plaintiffs and Appellants,

  v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

      Defendant and Appellee.

| | |
|---|---|
| APPEAL FROM: | District Court of the Fourth Judicial District,<br>In and For the County of Missoula, Cause No. DV-18-830<br>Honorable Shane A. Vannatta, Presiding Judge |

COUNSEL OF RECORD:

      For Appellants:

            Lincoln Palmer (argued), Rex L. Palmer, Attorneys Inc., P.C.,
            Missoula, Montana

      For Appellee:

            Bradley J. Luck (argued), Katelyn J. Hepburn, Garlington, Lohn &
            Robinson, PLLP, Missoula, Montana

      For Amicus Curiae Montana Trial Lawyers Association:

            Domenic A. Cossi (argued), Western Justice Associates, PLLC, Bozeman,
            Montana

                        Argued and Submitted: January 6, 2021
                                  Decided: March 16, 2021

Filed:

_____
                   Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Plaintiffs and Appellants Gary and Carolyn Kaul appeal the June 19, 2019 Opinion and Order (Summary Judgment) issued by the Fourth Judicial District Court, Missoula County.

¶2 The Kauls raise three issues on appeal, which we renumber and restate as follows:

1. *Whether the damage to the wall of the Kauls' RV constitutes "sudden damage" under the language of the policy.*

2. *Whether coverage for the wall repair is mandated under Montana's efficient proximate cause doctrine.*

3. *Whether the Kauls' wall repair is covered as a mitigation expense under the insurance agreement.*

¶3 We reverse on Issue 1, finding coverage is mandated under the language of the Kauls' insurance policy, and therefore find it unnecessary to address Issues 2 and 3.

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 In 2013, the Kauls purchased a new 2014 Northwood Arctic Fox 5th Wheel Trailer (the RV). The Kauls purchased a Recreational Vehicle Policy through State Farm Mutual Automobile Insurance Company (State Farm) to insure their RV. In 2017, the Kauls left Montana on an RV trip to Arizona. Gary inspected the roof of the RV on March 24, 2017, before leaving for Arizona. The Kauls returned to Missoula on April 17, 2017. At some point during the trip to Arizona, the roof of the RV was damaged. The Kauls did not discover the damage at the time.

2

¶5    After returning to Montana, the Kauls stored the RV, uncovered, at Dry Dock RV and Yacht Storage, located near the Missoula International Airport from April 18 to May 25, 2017. Missoula experienced rainy periods while the Kauls' RV was in storage. Between April 18 and April 30, 2017, it rained 10 of 14 days for a total of 0.56 inches, and between May 1 and May 18, 2017, it rained 10 of 18 days for a total of 1.33 inches. Specifically, at issue in the present proceeding is the rainfall of April 20, 2017. On that day, it rained .08 inches.

¶6    The Kauls took an RV trip to Glacier National Park from May 26 to May 29, 2017. During this trip, Gary noticed bubbling on the outer layer of the RV's passenger-side fiberglass wall but did not know why there was bubbling. The Kauls continued to use the RV throughout June 2017, and noticed more bubbling on the wall later that month. In late June of 2017, the Kauls took an RV trip to Coeur d'Alene, Idaho. While on that trip, Gary discovered an approximately 12- to 15-foot-long tear in the roof membrane directly above the passenger-side wall and presumed it was damaged by a tree branch at some point during the Kauls' Arizona trip earlier that year. The roof tear was not visible from ground level as the RV is approximately 13 feet tall. Gary repaired the tear to the manufacturer's specifications by sealing it with duct tape on June 26, 2017, and submitted a claim to State Farm that same day.

¶7    After Gary sealed the roof tear, the Kauls hauled the RV to Gardner's RV in Kalispell. Gardner's RV estimated it would cost $9,054.33 to fix the roof, but informed the Kauls that it could not repair the wall. State Farm did not send an adjuster to inspect

3

the RV. The Kauls attempted, without success, to find an RV shop in Montana that could fix the wall, before ultimately hauling the RV to be repaired by Curt Hurst of Curt's RV Service in LaGrange, Oregon, in October of 2017. Hurst inspected Gary's temporary repair to the roof tear and found it was watertight and secure. Prior to the temporary repair, however, water penetrated the walls through the roof tear and leaked into the wall panel. Because the RV wall was constructed with channels and cavities, water collected inside the wall panel and eventually led to the bubbling observed by the Kauls.

¶8 Hurst determined the only way to repair the wall was to remove and repair the wall panel in order to check for moisture and protect the RV from further water damage. The Kauls had Hurst perform all necessary repairs to the RV. Curt's RV Service charged $5,474.79 to repair the roof. In accordance with the policy, the Kauls paid the $500 deductible and State Farm paid the remaining $4,975.79 for the roof repair. Curt's RV Service charged $10,669.84 for the wall repair, which the Kauls paid for out of pocket. State Farm denied coverage for the wall repair, finding it was not a "covered loss" under the terms of the policy.

¶9 On June 13, 2018, the Kauls filed their Complaint in this matter, seeking to recover, among other claims not relevant to the present proceeding, "[t]he full benefits due under the insurance contract[.]" The Kauls also sought to recover their reasonable expenses incurred to protect and repair the RV, later calculated to be $3,177. Those expenses included materials, time, mileage, meals, and lodging associated with the Kauls' trips to repair shops in Kalispell and Oregon. State Farm filed its Answer to Complaint and Jury

4

Demand, and Counterclaim for Declaratory Judgment on November 20, 2018. Relevant here, State Farm requested both dismissal of the Kauls' complaint and a declaratory judgment that the wall damage caused by water infiltration was not covered because that damage was not "direct, sudden, and accidental" as required by the policy.

¶10 On February 20, 2019, the Kauls filed the Plaintiffs' Motion for Partial Summary Judgment and Brief in Support, seeking summary judgment on their entitlement to both reimbursement for the wall repair under the policy and for their reasonable expenses. State Farm filed the Defendant's Cross-Motion for Summary Judgment on February 28, 2019. After the parties fully briefed their motions, and with no party having requested oral argument, the District Court issued its Opinion and Order (Summary Judgment) on June 19, 2019. The District Court granted State Farm's motion for partial summary judgment and denied the Kauls' motion for partial summary judgment with respect to the coverage issue, finding the water damage was not covered by the policy, and granted the Kauls' motion for partial summary judgment regarding the reasonable expenses issue.[1]

¶11 On December 11, 2019, the Kauls filed an Unopposed Motion for Rule 54(b) Certification and Brief in Support, requesting the District Court enter its judgment on the

---

[1] After the District Court issued its Opinion and Order, State Farm sought relief from the District Court's order on reasonable expenses by filing State Farm's Rule 60(b) Motion for Relief from Order. After briefing, the District Court issued its Opinion and Order (Rule 60(b) Motion) on August 30, 2019, wherein it denied in part and granted in part State Farm's motion, finding State Farm did have to pay the Kauls' expenses but amending its Order to vacate "as to the specific total dollar amount attributed to the description of expenses to be reimbursed." State Farm ultimately agreed to pay the Kauls' $3,177 in expenses and this issue is not on appeal here.

wall coverage issue as final for the purposes of immediate appeal. On December 31, 2019, the District Court issued its Opinion and Order Granting Rule 54(b) Certification and certified the order as final pursuant to M. R. Civ. P. 54(b). The Kauls appeal.

## STANDARD OF REVIEW

¶12 We review summary judgment orders de novo, performing the same M. R. Civ. P. 56 analysis as the district court. *McClue v. Safeco Ins. Co.*, 2015 MT 222, ¶ 8, 380 Mont. 204, 354 P.3d 604 (citing *Albert v. City of Billings*, 2012 MT 159, ¶ 15, 365 Mont. 454, 282 P.3d 704). Summary judgment is only appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Kucera v. City of Billings*, 2020 MT 34, ¶ 6, 399 Mont. 10, 457 P.3d 952 (citing *Davis v. Westphal*, 2017 MT 276, ¶ 9, 389 Mont. 251, 405 P.3d 73).

¶13 We review determinations underlying the order granting summary judgment under the standard of review appropriate to that determination. *McClue*, ¶ 13 (citation omitted). We review evidentiary rulings for an abuse of discretion. *McClue*, ¶ 8 (citing *Harris v. Hanson*, 2009 MT 13, ¶ 18, 349 Mont. 29, 201 P.3d 151).

## DISCUSSION

¶14 The Kauls assert they are entitled to reimbursement for the RV's wall repair under three separate and independent theories of recovery. First, the Kauls argue coverage is mandated under the efficient proximate cause doctrine because the water damage would not have occurred but for the roof damage. Second, the Kauls contend the water damage to the wall of the RV was in fact "sudden" damage under the plain language of the policy.

6

Third, the Kauls argue reimbursement for the wall repair is due to them as a covered mitigation expense under the policy. The Kauls ask for a ruling on each of their three theories of recovery. Because we find the water damage was "sudden damage" and the Kauls are entitled to coverage under the plain language of the policy, we find it unnecessary to address the Kauls' alternative theories of recovery.

¶15    *1. Whether the damage to the wall of the Kauls' RV constitutes "sudden damage" under the language of the policy.*

¶16    The Kauls' policy with State Farm provides, as relevant here, that "loss" means "direct, sudden, and accidental damage to . . . a covered vehicle." It is undisputed the Kauls' RV is a covered vehicle for purposes of the policy. The District Court, in its summary judgment order, determined the water damage to the Kauls' RV was not a covered loss under the policy, "because the water damage to the wall of the RV was not the result of sudden damage."[2] The District Court found because the wall damage was not sudden damage as required by the terms of the policy that it therefore was not a covered loss. We disagree.

¶17    While it is unknown exactly when and where the roof of the RV was torn during the Kauls' trip to Arizona, State Farm paid for the roof repair pursuant to the terms of the policy after determining the damage—likely from striking an overhanging tree branch— was direct, sudden, and accidental. Due to the location of the strike, which was too high

---

[2] State Farm disputes only whether the damage was "sudden" but does not dispute the damage was "direct" and "accidental" under the policy.

off the ground to be seen, the Kauls were unaware the RV had been damaged at all, let alone had a 12- to 15-foot-long hole in the roof, when they drove it back to Montana and stored it uncovered at Dry Dock RV and Yacht Storage in Missoula. The Kauls placed the RV into storage on the night of April 17, 2017. On April 20, 2017, the Missoula weather station, located less than a mile from Dry Dock RV and Yacht Storage recorded .08 inches of rain.

¶18 The District Court took judicial notice of the weather data provided by the National Oceanic & Atmospheric Administration pursuant to M. R. Evid 201(b) and M. R. Evid. 803(8) for the period the RV was uncovered at the storage facility in Missoula, including April 20, 2017. The Kauls sought to have the District Court take judicial notice of MesoWest weather data showing the daily total amount of rain observed on April 20, 2017, was the same—.08 inches—but occurred in only 34 minutes. The Kauls argue the District Court abused its discretion by refusing to take judicial notice of the MesoWest data. State Farm did not object to the MesoWest data. While it would have been reasonable for the District Court to have taken judicial notice of the MesoWest data, our standard of review on an evidentiary decision such as this is for an abuse of discretion, *McClue*, ¶ 8, and we do not find an abuse of discretion here. The Kauls sought to present the MesoWest data as support for their theory the water damage to the RV wall was "sudden" as they calculate 2.54 gallons of water would have entered the roof tear from .08 inches of rain. We find that regardless of whether the .08 inches of rain fell in 34 minutes or over the course of several hours on April 20, 2017, it would still constitute "sudden" damage.

8

¶19 "[I]n the context of the phrase 'sudden and accidental,' the word 'sudden,' even if it includes the concept of unexpectedness, also encompasses a temporal element, because unexpectedness is already expressed by the word 'accidental.'" *Sokoloski v. American West Ins. Co.*, 1999 MT 93, ¶ 15, 294 Mont. 210, 980 P.2d 1043. In *Sokoloski*, homeowners repeatedly burned candles over a period of weeks. Eventually, the homeowners discovered smoke damage above the candles and made a claim to their home insurance company, which was denied as it determined the smoke damage was not "sudden and accidental" as required by the homeowner's policy. The district court upheld the denial of coverage. *See Sokoloski*, ¶¶ 3-5. On appeal, this Court determined smoke damage from burning candles over a period of weeks by homeowners was not covered and quoted from the district court's opinion and adopted its reasoning: "In the context of the coverage of smoke damage by a homeowner's insurance policy, the Court determines that 'sudden' connotes a sense of immediacy, which is measured in seconds, minutes and might be stretched to hours, but not weeks." *Sokoloski*, ¶ 16. We have held that, as used in insurance contracts, the word sudden "must have a temporal aspect to its meaning, and not merely a sense of something unexpected." *Travelers Cas. & Sur. Co. v. Ribi Immunochem Research*, 2005 MT 50, ¶ 26, 326 Mont. 174, 108 P.3d 469 (citing *Sokoloski*, ¶ 15).

¶20 In this case, the undisputed evidence shows the Kauls' RV was damaged, and a 12-to 15-foot-long hole was created in the roof, during their trip to Arizona. The RV was then driven back to Missoula before being stored outside, uncovered, at Dry Dock RV and Yacht Storage. On April 20, 2017, it rained .08 inches. The RV was then exposed to rain

several more times between that date and when the Kauls got the RV out of storage at the end of May and noticed the first visible bubbling during their trip to Glacier National Park. The Kauls then noticed more bubbling during their trip to Idaho in late June, before Gary Kaul climbed onto the RV's roof, discovered the tear, and made the waterproof temporary repair. State Farm asserts this chain of events makes it clear the RV suffered from progressive damage over a period of months as the RV was exposed to more and more rain, and therefore the RV clearly did not suffer "sudden" damage. State Farm further argues the "damage" to the RV was not from the water entering the wall, but from the gradual physical effects caused by the water which were not visible until later. Indeed, the affidavit of Hurst, presented by the Kauls, noted that it "takes time" for the water to soak into the plywood and it "could take weeks" for the bubbles observed by the Kauls to appear.

¶21 The District Court found, because it was weeks before the physical damage to the wall was visible, the damage to the RV's wall was not "sudden damage." Recognizing Hurst noted the entire wall panel would need to be removed upon water entering the walls because the water cannot escape, the District Court nevertheless found that "does not mean that there would be damage to the wall when water first entered the wall cavities." The District Court's conclusion is incorrect.

¶22 First, we reiterate that, as used in insurance contracts, "sudden" has a temporal aspect that connotes a sense of immediacy. *Sokoloski*, ¶¶ 15-16; *Ribi*, ¶ 26. Here, regardless of whether April 20, 2017's .08 inches of rain fell in 34 minutes or over the course of a few hours, that rainfall is "sudden" as we interpret the term. With a large hole

10

in the roof of the RV—from an admittedly covered event—the wall of the RV accepted water which could not escape. This trapped water would eventually lead to the visible bubbling observed by the Kauls. State Farm is correct that the RV was thereafter exposed to several more rain events which re-flooded the walls of the RV with even more water; however, the April 20, 2017 rainfall by itself is the event which triggered the coverage requirement under the Kauls' insurance policy. The later rainfalls are not relevant to determining whether the April 20, 2017 event was covered or not. Determining the April 20, 2017 rainfall was in fact "sudden," we turn now to whether that rainfall caused "damage."

¶23 The word "damage" is not defined in the Kauls' insurance policy with State Farm. Because "damage" is not defined, the parties dispute whether "damage" means the physical manifestation of the water's intrusion, i.e., the bubbling observed, or if it simply means the loss of value to the RV. Black's Law Dictionary provides two definitions for "damage": "1. Loss or injury to person or property . . . 2. By extension, any bad effect on something." *Damage*, *Black's Law Dictionary* (11th ed. 2019). Similarly, Merriam-Webster defines "damage" as "loss or harm resulting from injury to person, property, or reputation." *Damage*, *Merriam-Webster's Collegiate Dictionary* 314 (11th ed. 2012).

¶24 Here, the unrebutted affidavit of Hurst opined the Kauls' RV lost over $10,000 in value during the first rainstorm filling the walls of the RV with water. Though the visible injury to the RV would not physically manifest via bubbling for some weeks, the "damage" was already done. Hurst noted once as little as a gallon of water entered the walls of the

11

RV, the entire panel of the RV would need to be removed and repaired. While the District Court recognized Hurst's statement the whole wall of the RV would need to be removed for repairs after the first time water filled the cavities of the wall, it determined water entry by itself is not "damage" because it takes time for the water to soak into the plywood and manifest physical damage via bubbling. This conclusion is not supported by Hurst's uncontroverted affidavit. The RV suffered an over $10,000 loss of value during a "sudden" event. This loss of value is "damage."

¶25 State Farm argues, unpersuasively, that by the "Kauls' own admission, the value, usefulness and normal function of the RV was unimpaired until weeks, if not months after the initial rain event" because the Kauls continued to use the RV normally on their trips to Glacier and Idaho while the damage was slowly progressing inside the walls of the RV. Setting aside that the Kauls have consistently argued the RV's "value" was dramatically reduced due to the water damage, we note the RV also had a 12- to 15-foot-long hole in its roof during this time the Kauls were apparently able to use the RV normally on their trips. State Farm covered the roof repair because, clearly, the "value, usefulness and normal function" of an RV with a massive hole in the roof is not the same as one without—even when that hole is not readily visible. Similarly, the "value, usefulness and normal function" of an RV being eaten away from the inside of its walls by trapped water is not the same as one without that problem, again, even when that water is not readily visible. The unrebutted affidavit of Hurst showed the wall of the RV needed to come off for repair after the April 20, 2017 rainstorm. At that point, the RV was "damaged." That damage occurred

suddenly, and therefore State Farm is required to cover the wall repair under the plain language of the Kauls' insurance policy. The fact that the RV was later exposed to more rain and the physical manifestation of the damage occurred slowly are immaterial to our decision here.

¶26 As set forth above, Opinion, ¶¶ 2, 14, the Kauls presented three separate and independent theories of recovery for the wall damage to their RV—direct coverage under the policy, coverage under Montana's efficient proximate cause doctrine, and as a mitigation expense under the policy. As we have determined coverage for the wall repair is a covered expense under the plain language of the policy, we specifically do not address the Kauls' independent and alternative theories of recovery—efficient proximate cause and covered mitigation expense. The Dissent, however, inappropriately intermixes two of Kauls' theories of recovery into one—efficient proximate cause and coverage under the plain language of the policy—to not find coverage. The Dissent focuses on the roof tear as the "direct, sudden, and accidental" event which could mandate coverage under the policy rather than the rainfall event itself and concludes the rainfall cannot meet either the "direct" or "accidental" language of the policy. This conclusion is in stark contrast to State Farm's admission in its briefing that its "denial of coverage here turns on the definition of the word 'sudden.'" Accordingly, State Farm did not, in either the proceedings below or on appeal here, dispute the rainfall damage was both "direct" and "accidental" under the plain language of the Kauls' policy, but only contended it was not "sudden." The Dissent inappropriately focuses only on the initial accident which caused the tear, which would be

13

a legitimate focus in an efficient proximate cause analysis, but misses the mark here as we do not need to address Kaul's theory of efficient proximate cause because, by the plain language of the policy, the water damage to the wall of the Kauls' RV was "direct, sudden, and accidental" and therefore required to be covered by State Farm.

¶27     While we do not find it necessary to address Kauls' efficient proximate cause theory of recovery, we note the Dissent's confusion in understanding the Kauls' three separate theories of coverage. The Dissent asserts the Kauls argue the damage was "direct" under the efficient proximate cause doctrine. While this is accurate with regard to their efficient proximate cause doctrine issue, they also asserted under the plain language of the policy itself that the rainfall met the direct and accidental criteria, which was not disputed by State Farm—under the plain language of the policy State Farm disputed only that the rainfall damage was "sudden." The Dissent then asserts "[Kauls] state the issue on appeal as follows: whether the efficient proximate cause doctrine is applicable to a physical damage insurance policy that requires the damage be 'sudden.'" Dissent, ¶ 35. This, however, is not the dispositive issue asserted by the Kauls which we address in this Opinion, and the Dissent takes this language from the argument section of the Kauls' briefing on their efficient proximate cause doctrine issue. Again, the Kauls asserted three separate and independent issues on appeal. The one dispositive in this Opinion is whether coverage exists by the plain language of the policy, or as presented by the Kauls, "[w]hether 34 minutes of water entry into the RV wall constitutes 'sudden damage' when it immediately

14

impairs the value of the RV and requires repair."[3]  We conclude it does.  As State Farm

does not dispute it is also "direct" and "accidental," by the policy language itself the rainfall

damage is a covered loss.  It is not necessary to analyze whether the efficient proximate

cause doctrine would also independently extend available coverage to the Kauls in relation

to the initial roof tear and we have not done so here.

¶28    By the plain language of the policy, the water damage to the wall of the Kauls' RV

was "direct, sudden, and accidental" and therefore required to be covered by State Farm.

Accordingly, we reverse the District Court's grant of partial summary judgment to State

Farm on the wall coverage issue and remand to the District Court for entry of partial

summary judgment in favor of the Kauls on the wall coverage issue.  As we have

determined coverage for the wall repair is a covered expense under the plain language of

the policy, we need not address the Kauls' alternative theories of recovery as presented in

restated Issues 2 and 3.

## CONCLUSION

¶29    The District Court erred by granting State Farm's motion for summary judgment

because coverage for the wall damage to the Kauls' RV is mandated under the plain

language of the policy.

---

[3] While the Dissent mistakenly appears to believe we have "accepted [the Kauls'] theory" regarding the 34 minutes of rainfall, we specifically did not accept that the rainfall occurred in only 34 minutes and found, "regardless of whether the .08 inches of rain fell in 34 minutes or over the course of several hours on April 20, 2017, it would still constitute 'sudden' damage."  Opinion, ¶ 18.

15

¶30    Reversed and remanded.

/S/ INGRID GUSTAFSON

We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR
/S/ JIM RICE

Justice Laurie McKinnon, dissenting.

¶31    The Court has illogically severed the occurrence or accident triggering coverage and causing the loss—the tear in the roof—and tethered it instead to a "sudden" amount of rainfall.  In doing so, the Court has distorted a clear and unambiguous temporal limitation of the Policy and extended coverage beyond the Policy's terms, effectively removing the "sudden" or temporal requirement for a loss to be covered.  Here, under the terms of the Policy, the covered loss began when the roof tore and ended when the loss was no longer "sudden."  A "sudden" amount of rainfall occurring weeks after the roof tear is not a covered loss because it is not "sudden," *as it relates to the roof tear*.  The Court's decision rewrites the Policy by substituting rainfall as the accident or occurrence that caused a "sudden" loss.  According to the Policy, State Farm "will pay for loss to a covered vehicle," and the Policy defines "loss" to mean: "[d]irect, sudden, *and* accidental damage to . . . a covered vehicle." (Emphasis added.)   The Policy is clear and unambiguous: for a loss to

16

be covered under the Policy, the loss must be direct *and* sudden *and* accidental. The definition of "loss" in the Policy is conjunctive—each of the three elements must be met to trigger coverage. In effect, the Court's conclusion that the loss was "sudden" extends coverage beyond the clear terms of the Policy and disregards the obvious temporal limitation of loss associated with the roof tear. Under the Court's analysis, the term "sudden" is rendered meaningless. In the context of this Policy, and pursuant to general principles of contract interpretation, I conclude this was in error.

¶32 General rules of contract law apply to insurance policies and we give the terms and words used in an insurance contract their usual meaning and construe them using common sense. *Ribi*, ¶ 17; *Hardy v. Progressive Specialty Ins. Co.*, 2003 MT 85, ¶ 14, 315 Mont. 107, 67 P.3d 892. If the policy language is clear and unambiguous, it should not be rewritten, but enforced as written. *Counterpoint, Inc. v. Essex Ins. Co.*, 1998 MT 251, ¶ 13, 291 Mont. 189, 967 P.2d 393. Courts may not rewrite an insurance policy by ignoring clear and unambiguous language. *Heggem v. Capitol Indem. Corp.*, 2007 MT 74, ¶ 22, 336 Mont. 429, 154 P.3d 1189 (citation omitted). This Court will "read the policy as a whole, and if possible, we reconcile its various parts to give each one meaning and effect." *Newbury v. State Farm Fire & Cas. Ins. Co.*, 2008 MT 156, ¶ 19, 343 Mont. 279, 184 P.3d 1021 (citations omitted); *see also* § 28-3-202, MCA, stating, "The whole of a contract is to be taken together so as to give effect to every part if reasonably practicable, each clause helping to interpret the other." Courts should not "seize upon certain and definite covenants expressed in plain English with violent hands

17

and distort them so as to include a risk clearly excluded by the insurance contract." *Johnson v. Equitable Fire & Marine Ins. Co.*, 142 Mont. 128, 131, 381 P.2d 778, 779 (1963).

¶33 Here, although the Court's and parties' analysis focuses primarily on whether the loss was "sudden," the conjunctive nature of the defined term "loss" requires an analysis of "sudden" along with "direct" and "accidental." The Policy is clear in this regard. "Sudden" cannot be read independently from the other required elements and, in my opinion, this is where the Court's confusion begins. Kauls maintain their loss is covered under the efficient proximate cause doctrine; State Farm argues the doctrine is both irrelevant and inapplicable because the Policy requires that the loss be "sudden," which clearly it was not. The Court confuses these conjunctive terms, focuses on whether the *rainfall* was sudden, and avoids the plain and clear language of the Policy. Whether there is a covered loss under the Policy requires consideration of the entire definition of "loss."

¶34 The Policy does not provide definitions for "direct," "sudden," or "accidental." As such, this Court is "bound to interpret its terms according to their usual, common sense meaning . . . ." *Steadele v. Colony Ins. Co.*, 2011 MT 208, ¶ 18, 361 Mont. 459, 260 P.3d 145. To begin, the loss must occur as a result of an "accident," as the express terms of the Policy require the loss must be "accidental." Here, the accident was not heavy rainfall, but rather the torn roof. The Court's reasoning is fundamentally flawed when it does not consider the accident that is associated with the claim and the loss. Here, the accident and claim all relate to the roof tear. For the Court to select a different event than

18

the roof tear to constitute the accident, i.e., the sudden rainfall, misconstrues the Policy's definition of "loss," which can be attributed only to the claim respecting the roof tear. Neither the District Court nor any of the parties have argued that the accident was the rainfall; it has remained undisputed that the accident was the roof tear. There is no room for this "cut and paste" approach when interpreting the language of an insurance contract. This is the first flaw in the Court's analysis.

¶35 Respecting the requirement that the loss be "direct," Kauls rely on the efficient proximate cause doctrine to assert the RV's wall damage was direct. "Under this doctrine, where covered and noncovered perils contribute to a loss, the peril that set in motion the chain of events leading to the loss or the 'predominating cause' is deemed the efficient proximate cause or legal cause of loss." *Olin Corp. v. Cont'l Cas. Co.*, 642 Fed. Appx. 748, 750 (9th Cir. 2016) (citation omitted). Kauls argue the doctrine applies to the case at hand and mandates coverage of the wall repair because the covered roof tear proximately caused the wall damage. As to whether the doctrine applies, Kauls state the issue as follows: whether the efficient proximate cause doctrine is applicable to a physical damage insurance policy that requires the damage be "sudden." The issue, however, is whether the doctrine applies to policy language requiring the damage be "direct, sudden, and accidental."

¶36 Kauls argue the doctrine is applied broadly, citing *Green v. Milwaukee Mechanics' Ins. Co.*, 77 Mont. 505, 252 P. 310 (1926); *Frontline Processing Corp. v. Am. Econ. Ins. Co.*, 2006 MT 344, 335 Mont. 192, 149 P.3d 906; and *Park Saddle Horse Co. v. Royal Indem. Co.*, 81 Mont. 99, 261 P. 880 (1927). Notably, the policy language in neither

19

*Green*, *Frontline*, nor *Park Saddle* required the loss be "sudden," let alone "direct, sudden, and accidental."[1]  As the District Court pointed out, in contrast to *Green*, *Frontline*, and *Park Saddle*, the Policy here defines "loss" as "direct, sudden and accidental damage."  The District Court explained a "direct" loss is different from one which is "direct, sudden, and accidental" as these terms are, on their face, different.  If State Farm had intended to cover only "direct" loss, it could have provided as much in the Policy, but it is undisputed that, for coverage to be required pursuant to the Policy, the loss must be one which is "direct, sudden, and accidental."  The very use of the three separate words reveals a clear intent to state three separate requirements.  If "loss" was defined as only "direct loss" in the Policy, then the efficient proximate cause analysis would have merit (*see Frontline*, *Green*, and *Park Saddle*).  The District Court correctly held that "the efficient proximate cause analysis is not appropriate when loss is defined in the Policy to include the combination of 'direct, sudden, and accidental damage.'"  To apply the analysis when loss is defined as "direct, sudden, *and* accidental damage" (emphasis added), would remove the requirement of "sudden" and "accidental" from consideration.  The clear language of the Policy

---

[1] In *Green*, 77 Mont. at 510, 252 P. at 311, the policy insured the plaintiff "against all direct loss or damage by fire, except as hereinafter provided."  The exemption clause exempted the insurer from damages caused by an explosion of any kind, unless fire ensued, and in that event, liability for damages attached only when caused by fire.  In *Frontline*, ¶ 2, the Court addressed the question of whether the term "direct loss," when used in the context of employee dishonesty coverage afforded under a businessowner's liability policy, included consequential damages that were proximately caused by the alleged dishonesty, or whether the construction of the term "direct loss" was limited to those damages that directly resulted from the alleged employee's dishonesty.  In *Park Saddle*, 81 Mont. at 108, 261 P. at 882-83, the plaintiff was insured against loss by reason of the ownership, maintenance, or use of saddle horses in connection with the horse business.

20

significantly limits, from the outset, any interpretation that a causal chain is reasonable unless the damage was "sudden" as well as "direct."

¶37    Kauls argue this conclusion is erroneous and maintain that "the efficient proximate cause doctrine is not restricted in its application to cases involving specific policy language . . . ." *Kelly v. Farmers Ins. Co., Inc.*, 281 F. Supp. 2d 1290, 1298 (W.D. Okla. 2003). I do not disagree. However, I find it contrary to the fundamental principles of contracting and insurance policy interpretation to expand the efficient proximate cause doctrine to the point of rendering the clear and unambiguous language of a policy null. I reject such a broad application of the doctrine. As is the case here, such application would impermissibly rewrite, and remove key coverage requirements, from existing policies. "The hallmark of contract construction is to ascertain the intent of the parties." *Park 'n Go v. U.S. Fid. & Guar. Co.*, 471 S.E.2d 500, 503 (Ga. 1996). Here, the parties entered into a contract with clear language limiting direct losses to losses which were *also suddenly* caused by the roof tear, regardless of whether the roof tear was an efficient proximate cause of the water damage. The Court avoids addressing the efficient proximate cause doctrine by distorting and misconstruing the Policy's requirement that the loss be "sudden" and attaching the loss to the rainfall event. However, by continuing the loss indefinitely beyond the roof tear accident, the Court has rendered the term "sudden" meaningless. If the parties had intended to cover damages that were only "direct," the Policy would have stated as much. In my opinion, the District Court correctly concluded

21

that the efficient proximate cause doctrine was inapplicable given the Policy's definition of "loss."

¶38 Kauls argue the District Court interpreted the efficient proximate cause doctrine so narrowly as to effectively abrogate it. To the contrary, upholding the District Court's interpretation will leave the doctrine fully intact while honoring the clear and unambiguous language of the Policy and the intent of the parties. Although Kauls are correct that an efficient proximate cause analysis may be appropriate with a variety of policy language and in a variety of factual circumstances when determining whether a loss is "direct," the efficient proximate cause analysis is not appropriate when loss is defined in a policy to include the combination of "direct, sudden, and accidental." To do so renders "sudden" and "accidental" meaningless. Though the water damage to the RV wall would not have happened but for the tear in the roof, this is a different consideration than what must be determined in this case: whether the damage is a "loss" covered by the Policy. We are again directed back to the definition of "loss" in the Policy, which requires the damage also be "sudden."

¶39 Kauls argue the RV's wall damage was "sudden" because the rainfall was "sudden." They rely on the theory that "more than two gallons of rain entered the wall" in 34 minutes on April 20, 2018. The Court accepted this theory and concluded the damage was "sudden." The Court's conclusion implies, and the Kauls contend, that the wall damage was directly related to the rain, and the damage was "sudden" due to the rainfall in those 34 minutes. This conclusion confuses the Policy's definition of "loss" and ignores

22

considerations of whether the tear in the RV's roof was "accidental" and a "direct" cause. The Court's conclusion severs the necessary causal link between the accident or occurrence which potentially triggered coverage, the roof tear, and substitutes rapid rainfall for the temporal requirement of the Policy.

¶40 Were this Court to correctly attribute its loss analysis to the appropriate accident, then the water damage occurring weeks after the roof tear could not be considered "sudden" within the language of the Policy and our case law. In *Sokoloski*, ¶ 14, this Court concluded the word sudden must include a temporal component. The Court in *Sokoloski*, ¶ 16, determined that "'sudden' connotes a sense of immediacy, which is measured in seconds, minutes, and might be stretched to hours, but not weeks." This Court ruled the gradual accumulation of soot and smoke over a four-to-five-week period was not "sudden and accidental" for purposes of policy coverage. *Sokoloski*, ¶ 16.

¶41 Here, the burden is on the Kaul's to show that coverage applied. They have not met that burden because the record does not support the conclusion that the damage resulting from the "accident"—the roof tear—was "sudden." I dissent from the Court's conclusion that the wall damage to the RV was a covered loss. I conclude that the terms of the Policy are not ambiguous and must be enforced as written. I would affirm the District Court's order.

/S/ LAURIE McKINNON

23